# United States Court of Appeals
## For the First Circuit

No. 05-2727

MICHAEL S. McCONKIE,

Plaintiff, Appellant,

v.

SCOTT NICHOLS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Selya, Circuit Judge,

Hug,[*] Senior Circuit Judge,

and Howard, Circuit Judge.

Christopher K. MacLean, for appellant.

William R. Fisher, Assistant Attorney General, with whom G. Steven Rowe, Attorney General of Maine, was on brief, for appellee.

May 15, 2006

[*]Of the Ninth Circuit, sitting by designation.

**HUG, <u>Circuit Judge</u>.**  Michael McConkie appeals the District Court's decision to grant summary judgment to Maine State Police Detective Scott Nichols.  In his First Amended Complaint, McConkie alleged that he was entitled to relief under 42 U.S.C. §§ 1983 and 1988 because Nichols violated his constitutional right to substantive due process in the course of questioning him about suspected sexual abuse of a ten-year-old child.  The District Court granted Nichols summary judgment on the ground that no reasonable factfinder could find that Nichols's conduct was conscience-shocking.  We affirm.

McConkie's claim arose out of a tape-recorded, non-custodial interview with Detective Nichols on June 23, 1998. Nichols had set up the interview after speaking to a boy who said that McConkie had sexually abused him.  The transcript of the interview indicates that Nichols was aware of McConkie's criminal history and that McConkie acknowledged to Nichols that he had been placed in an intense therapy program because of his sexual behavior.

During the interview, Nichols told McConkie that "this stuff stays confidential, especially because a juvenile is involved."  Later in the interview, McConkie admitted to sexual contact with the child.

These admissions were introduced at McConkie's subsequent criminal trial, but McConkie does not base his claims

on the use of the admissions; rather, he bases his claims on the tactics Nichols used in the interview. In particular, in his First Amended Complaint, McConkie alleged that Nichols intentionally deceived him about his Fifth Amendment right against self-incrimination when he made the statement that the information would stay confidential. He further alleged that this violated his substantive due process rights and that he therefore was entitled to relief under 42 U.S.C. §§ 1983 and 1988.

Nichols denied the material allegations of the complaint and asserted affirmative defenses, including that his conduct did not shock the conscience. On February 3, 2005, Nichols moved to dismiss the First Amended Complaint and, alternatively, moved for summary judgment on the ground that McConkie had not alleged conscience-shocking conduct, an essential element of a substantive due process claim. The judge ultimately denied Nichols's motion to dismiss, but granted Nichols summary judgment on the ground that, as a matter of law, Nichols's conduct did not shock the conscience.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a District Court's grant of summary judgment de novo, viewing all facts in the light most favorable to the nonmoving party and granting all reasonable inferences in that party's favor. Torres v. E.I. DuPont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000). Summary judgment is appropriate if there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Id.

McConkie rests his claims solely on substantive due process grounds, not on the Fifth Amendment.  When a case, like this one, involves an alleged abuse of power by the executive branch, the claim is cognizable as a violation of substantive due process "only when it is so extreme and egregious as to shock the contemporary conscience."  DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005).  "The 'shock the conscience' inquiry requires a comprehensive analysis of the attendant circumstances before any abuse of official power is condemned as conscience-shocking."  Id. at 119.  Examining all the attendant circumstances here, we hold that no reasonable juror could find that Nichols's conduct shocked the conscience.

In order to shock the conscience, the conduct must be "truly outrageous, uncivilized, and intolerable."  Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999).  The Due Process Clause does not impose liability every time someone with state authority causes harm; otherwise, "the Constitution would be downgraded to a 'font of tort law.'"  DePoutot, 424 F.3d at 118 (citation omitted).  In DePoutot, we summarized the meaning of "shocks the conscience" as follows:

> While the "shock the conscience" standard is imprecise, it is a helpful guide.  Conceptually, it does not

-4-

> replicate, or even draw upon, negligence law.  Rather, this metric "points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability."  It is, therefore, readily apparent that negligent conduct, simpliciter, is categorically insufficient to shock the conscience.  Executive branch action that sinks to the depths of shocking the contemporary conscience is much more likely to find its roots in "conduct intended to injure in some way unjustifiable by any government interest."
>
> Consistent with these principles, we have stated that "the requisite arbitrariness and caprice" for a conscience-shocking executive action "must be stunning, evidencing more than humdrum legal error."

Id. at 119 (internal citations omitted).  Even violations of the law resulting from bad faith do not necessarily amount to unconstitutional deprivations of substantive due process; conduct that is "more egregious and more extreme" is required.  Id.

Conscience-shocking conduct usually entails physical or psychological abuse, or significant interference with a protected relationship, such as the parent-child relationship.  See, e.g., Rochin v. California, 342 U.S. 165, 172 (1952) (forcibly pumping suspect's stomach for drugs); Harrington v. Almy, 977 F.2d 37, 43-44 (1st Cir. 1992) (conditioning employment on taking highly intrusive physical test of sexual arousal); Grendell v. Gillway, 974 F. Supp. 46, 51 (D. Me. 1997) (reasoning that it struck at the basic fabric of the parent-child relationship for officer to tell a girl that her parents would be arrested and she would be in trouble if she did not tell officers about her parents' drug use).

Nichols did not engage in physical or psychological abuse or interfere with a protected relationship.

Even where an officer questions a suspect in an unlawful manner, this does not necessarily mean that the questioning entitles the plaintiff to damages under section 1983; the Supreme Court has recognized that it would be inappropriate to impose tort liability every time an officer obtains an involuntary self-incriminating statement or the police fail to honor <u>Miranda</u> v. <u>Arizona</u>, 384 U.S. 436 (1966). <u>See</u> <u>Chavez</u> v. <u>Martinez</u>, 538 U.S. 760, 779-80 (2003). As the Supreme Court has noted, exclusionary rules rather than damages often can provide the deterrent necessary to deter unlawful questioning. <u>Id.</u>

McConkie essentially argues that it is the fact that Nichols lied in the course of the questioning that is conscience-shocking. Even construing Nichols's statements as lies, lies alone are not necessarily considered conscience-shocking. <u>See</u>, <u>e.g.</u>, <u>Cruz-Erazo</u> v. <u>Rivera-Motanez</u>, 212 F.3d 617, 623 (1st Cir. 2000) (holding that it was not conscience-shocking for police officers to deliberately lie in official documents and perjure themselves in official court proceedings); <u>United States</u> v. <u>Byram</u>, 145 F.3d 405, 408-09 (1st Cir. 1998) (holding that not all false statements made by officers to elicit confessions are outrageous or uncivilized).

McConkie contends, however, that Nichols's conduct was particularly egregious because, by telling McConkie that his statement would remain confidential, Nichols knowingly misrepresented the nature of McConkie's Fifth Amendment rights. Although such conduct is not something to be condoned, a reasonable juror could not find that it is so egregious that it shocks the conscience. We have deemed more offensive conduct not to be conscience-shocking. See, e.g., Cruz-Erazo v. Rivera-Motanez, 212 F.3d 617; Hasenfus, 175 F.3d at 74 (holding that school's failure to take action to prevent child from committing suicide was not even close to meeting the standard for shocking the conscience); Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) (holding that it may have been "despicable and wrongful" for officer to tell young children that they would never again see the man they viewed as their father, but it did not shock the conscience).

McConkie suggests that, because there was no legitimate interest in Nichols lying about McConkie's constitutional rights, the lies are conscience-shocking. It is true that executive branch action that is unjustified by any government interest is more likely to shock the conscience. DePoutot, 424 F.3d at 119. However, even if we assume that Nichols was not acting out of concern that a pedophile was loose and could molest another child any day, the fact that an officer acts in a way that does not

further a government interest is not sufficient to show that the conduct is conscience-shocking. The First Circuit has, on more than one occasion, found that misconduct that furthered no government interest was not conscience-shocking. <u>See</u>, <u>e.g.</u>, <u>Cruz-Erazo</u>, 212 F.3d at 622-24; <u>Souza</u> v. <u>Pina</u>, 53 F.3d 423, 427 (1st Cir. 1995)(holding that it did not shock the conscience for prosecutors to hold press conference accusing suicidal man of committing serial murders); <u>Pittsley</u>, 927 F.2d at 6-7.

In some circumstances, it might be conscience-shocking for an officer to elicit or provide knowingly false information about a suspect. <u>See</u> <u>Limone</u> v. <u>Condon</u>, 372 F.3d 39, 45 (1st Cir. 2004) (deliberately fabricating evidence to frame someone for a crime the person did not commit and to protect the true perpetrators was a violation of due process); <u>but</u> <u>see</u> <u>Cruz-Erazo</u>, 212 F.3d at 623. However, even assuming that McConkie's admissions were false, examining the evidence in the light most favorable to McConkie, there is no evidence that Nichols was trying to elicit a false confession. In fact, Nichols told McConkie that he just wanted the truth.

Thus, as a matter of law, Nichols did not engage in conduct that shocks the conscience, and the District Court properly granted summary judgment.

**<u>Affirmed</u>**.

-8-