# United States Court of Appeals

## For the First Circuit

No. 05-2224

JAMES M. FEENEY,

Plaintiff, Appellant,

v.

CORRECTIONAL MEDICAL SERVICES, INC.;
ARTHUR K. BREWER, M.D.; JOHN D. NOONAN;
JOHN CROTTY, Medical Director; DONALD KERN, M.D.;
KASIM GOUDA; CHARLES KING, M.D.;
CAROL MCLELLAN, Nurse Practitioner,

Defendants, Appellees.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Selya, Lipez, and Howard,
Circuit Judges.

Edgar L. Kelley on brief for appellant.
David A. Hilton, Charles M. Urso, and Morrison Mahoney LLP on
brief for appellees.

October 2, 2006

**LIPEZ, <u>Circuit Judge</u>**.    Plaintiff-appellant James M. Feeney, a former inmate of the Massachusetts correctional system, brought suit under 42 U.S.C. § 1983 claiming that Correctional Medical Services, Inc. ("CMS") and seven health care professionals acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  The district court dismissed the case against five of the defendants for failure to state a claim and later granted summary judgment in favor of the other three.[1]  Feeney appeals, and we affirm.

**I.**

## A.   Factual Background

At all times relevant to his complaint, appellant Feeney was an inmate at the Old County Correctional Center in Bridgewater, Massachusetts.  He was released in December 2004.  He claims that, for more than two years during his incarceration, he was denied appropriate medical care, including prescribed orthopedic footwear, for "plantar fasciitis," a painful foot condition. The following

---

[1] CMS provided medical care for Massachusetts inmates through December 2002.  Its successor, the University of Massachusetts Correctional Healthcare Program ("UMCHP"), is not a defendant in this case.  The defendants dismissed were: CMS; the director of the Health Services Unit ("HSU") at Old County Correctional Center, John Crotty; two medical doctors in the unit, Donald Kern and Kasim Gouda; and John Noonan, director of the Department of Correction's Health Services Division.  The remaining defendants were Arthur Brewer, Regional Medical Director of CMS through December 2002; Charles King, a podiatrist; and Carol McLellan, a nurse practitioner in Old County's HSU.

facts concerning his treatment, summarized from the record, are not in dispute.

Feeney first reported foot pain on August 7, 2000. Between August and November, he was examined repeatedly by nurses and once by physician Kern. Medication for pain relief was prescribed, x-rays were taken, and generic shoe inserts (heel cups) were provided. On November 7, podiatrist King diagnosed Feeney with "acute plantar fasciitis."[2] The doctor provided an anti-inflammatory steroid injection and advised continued use of the shoe inserts and pain medication. Treatment of Feeney's foot pain continued during the next several months. He was examined multiple times by various medical practitioners, and additional laboratory tests and x-rays were ordered. Different shoe inserts (arch supports) were prescribed and provided. Stretching exercises, ice, and alternative pain medications were prescribed when prior medications became ineffective.

On June 19, 2001, King saw Feeney for the third time. Feeney would not permit King to examine his feet, claiming that they were too sore to be touched. King ordered a "custom molded orthotic" and "walking shoes." The next day, Kern discussed the case with King and countermanded "for now" King's prescription for

_____

[2] The plantar fascia is a fibrous tissue in the sole of the foot. Plantar fasciitis is an inflammation of the plantar fascia that causes foot or heel pain. Stedman's Medical Dictionary 646-47, 649, 652 (27th ed. 2000).

orthotics because "the patient did not allow Dr. King to examine him." In the absence of any objective medical evidence, Kern thought it premature to order orthotics. King scheduled a reevaluation of Feeney, which occurred on July 24, with Kern present. This time, according to Kern's report, King indicated that Feeney's "evaluation is not consistent with a diagnosis of plantar faci[i]tis. Other possibilities include a neurologic etiology and/or non-organic etiology." King suggested that custom arch supports be placed in Feeney's current shoes because such an intervention would not aggravate a neurologic problem and would likely resolve a true case of plantar fasciitis. Before adopting King's recommendation, Kern sought outside review to explore the possibility of a neurological cause for Feeney's foot pain.

Although Feeney met with medical professionals repeatedly during the next year and a half, he did not receive the prescribed orthotics. He had various diagnostic tests and a physical therapy consultation. On December 30, 2002, Feeney was evaluated by a neurosurgeon at Tufts-New England Medical Center. The neurosurgeon also suspected plantar fasciitis: "I think James Feeney has right plantar fasciitis which evolved into a right lower extremity pain syndrome." On March 25, 2003, podiatrist King saw Feeney again. He "strongly recommend[ed] supportive walking shoe[s] in conjunction with custom orthotics," and his report was reviewed and

endorsed by Kern on April 21. Feeney eventually received his orthotics in May 2003.

## B. Procedural Background

Feeney filed the pro se complaint underlying this case in early January 2002, while his treatment was ongoing. On June 19, 2002, the district court issued an order directing that the claims against CMS, Crotty, Gouda, and Kern be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e), unless Feeney showed good cause within 42 days why the claims against those defendants should survive.[3] The time period elapsed with no filing by Feeney.[4]

Nearly three years later, and after numerous other filings, Feeney retained counsel. On May 31, 2005, the three

---

[3] Section 1915 governs proceedings that are filed in forma pauperis. The statute authorizes a federal court, sua sponte, to dismiss such an action if the court determines that it fails to state a claim on which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii). The district court concluded that Feeney's allegations arguably raised a claim for deliberate indifference against Brewer, Noonan, McLellan and King, but that he failed "to allege any facts indicating that any action (or inaction) by [CMS, Crotty, Kern or Gouda] . . . actually injured him."

[4] Appellant did submit a cursory motion seeking to amend his complaint on August 26, 2002 – after the 42-day deadline. The court denied that motion a month later, without prejudice, because it was not accompanied by a proposed amended complaint. Another motion for leave to amend was docketed on October 3, but again no proposed amended complaint was attached. The earlier motion stated that CMS and Kern were "necessary to properly proceed in this action," but did not elaborate and made no reference to Crotty and Gouda. The second motion added a reference to Crotty as a "necessary" party.

remaining defendants – Brewer, McLellan, and King – jointly filed a motion for summary judgment.[5]  On June 8, CMS, Crotty, Gouda and Kern filed a motion for entry of a separate and final judgment under Fed. R. Civ. P. 54(b).  The district court held a hearing on the pending motion for summary judgment on July 7.  It granted the motion the same day, and entered a final judgment in favor of all defendants, including those previously dismissed.  On appeal, Feeney challenges the court's summary judgment ruling.[6]

## II.

### A.  Standard of Review

We review a district court's summary judgment ruling <u>de novo</u>, taking the facts in the light most favorable to the nonmoving party and likewise drawing all reasonable inferences in that party's favor.  <u>McConkie</u> v. <u>Nichols</u>, 446 F.3d 258, 260 (1st Cir. 2006); <u>Merchants Ins. Co. of NH</u> v. <u>U.S. Fidelity and Guaranty Co.</u>, 143 F.3d 5, 7 (1st Cir. 1998).  Summary judgment is appropriate if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>McConkie</u>, 446 F.3d at 260; Fed. R. Civ. P. 56(c).

---

[5] By this time, the court had granted Noonan's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

[6] Appellant's brief does not address the dismissal rulings and we accordingly do not consider them.

**B.  Analysis**

**1.  Legal framework**

In <u>Estelle</u> v. <u>Gamble</u>, 429 U.S. 97 (1976), the Supreme Court established that an Eighth Amendment claim of "cruel and unusual punishment" based on medical mistreatment requires more than "an inadvertent failure to provide adequate medical care" and must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Id.</u> at 105-06; <u>see</u> <u>also</u> <u>Miranda</u> v. <u>Munoz</u>, 770 F.2d 255, 259 (1st Cir. 1985).

> The obvious case would be a denial of needed medical treatment in order to punish the inmate. But deliberate indifference may also reside in 'wanton' decisions to deny or delay care, where the action is recklessness, 'not in the tort law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.'

<u>Watson</u> v. <u>Caton</u>, 984 F.2d 537, 540 (1st Cir. 1993) (internal citations omitted).

"Deliberate indifference" thus defines a narrow band of conduct in this setting.  In <u>Layne</u> v. <u>Vinzant</u>, 657 F.2d 468 (1st Cir. 1981), we stated that even a jury finding of "treatment substandard, even to the point of malpractice, is not the issue." <u>Id.</u> at 474.  Importantly for our analysis of Feeney's claim, we held in <u>Ferranti</u> v. <u>Moran</u>, 618 F.2d 888 (1st Cir. 1980), that when a plaintiff's "allegations simply reflect a disagreement on the appropriate course of treatment[, s]uch a dispute with an exercise of professional judgment may present a colorable claim of

-7-

negligence, but it falls short of alleging a constitutional violation." Id. at 891; see also Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). The care provided must have been "'so inadequate as to shock the conscience.'" Torraco, 923 F.2d at 235 (quoting Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987)).

## 2. Feeney's claim

In alleging deliberate indifference to his serious medical needs, Feeney points particularly to the lengthy delay in providing him with orthopedic footwear after King first prescribed it in June 2001. That delay is plain from the record. Within context, however, it falls short of establishing an Eighth Amendment violation. The summary judgment record reveals that: (1) Feeney was examined by medical professionals many times – sometimes weekly – after he first reported his symptoms; (2) numerous diagnostic tests were performed, including blood work, x-rays, and MRIs; (3) outside specialists, including a podiatrist, neurologist, neurosurgeon, and physical therapist were consulted; (4) Feeney was given other treatments for his symptoms, including pain medications, generic shoe inserts (as opposed to custom orthotics), steroid injections, and physical therapy; and (5) throughout the relevant time period, uncertainty remained about the source of his pain, and causes other than plantar faciitis were being investigated.

Kern's cancellation "for now" of King's prescription for orthotics in June 2001 was reasonably based on the fact that Feeney had refused to allow King to examine his feet that day, and the podiatrist also had not yet seen recently taken x-rays. King thus had no current clinical support for the prescription. The next month, after King examined Feeney with Kern present, the podiatrist indicated that a neurological problem, rather than plantar fasciitis, might be the problem. Although King again suggested custom orthotics, the recommendation was offered as a method for possibly excluding plantar faciitis as a diagnosis. Given the speculative value of the proposed remedy, Kern's desire to obtain review of King's conclusions before moving ahead with a remedial plan was understandable.

Although the course of treatment during the next twenty-two months led back to the prescription for orthotics, the delay alone – given the ongoing efforts to identify the source of appellant's pain – does not on any view of the facts rise to the level of an Eighth Amendment violation. The correctional center's medical staff was responsive to appellant's complaints, expended substantial resources trying to get to the root of his problem, and adopted other measures in an effort to alleviate his discomfort. Even if it could be said that failing to provide the orthotics earlier reflected poor judgment on the part of some defendants – a matter on which we take no view – this was not an omission that

could be termed "deliberate indifference to serious medical needs," Estelle, 429 U.S. at 104.  "'[W]here the dispute concerns not the absence of help, but the choice of a certain course of treatment,' . . . deliberate indifference may be found where the attention received is 'so clearly inadequate as to amount to a refusal to provide essential care.'"  Torraco, 923 F.2d at 234 (internal citations omitted).  The record unequivocally demonstrates that this is not such a case.

Accordingly, the district court properly granted summary judgment in favor of Brewer, McLellan, and King.

**Affirmed**.