# United States Court of Appeals
## For the First Circuit

No. 06-1761

ANGELINA RUIZ-ROSA,

Plaintiff, Appellant,

v.

JOHNNY RULLÁN, SECRETARY OF THE DEPARTMENT OF HEALTH
OF THE COMMONWEALTH OF PUERTO RICO, ET AL.,

Defendants, Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and DiClerico, Jr.,* District Judge.

José R. Olmo-Rodríguez for appellant.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
Department of Justice, with whom Salvador J. Antonetti-Stutts,
Solicitor General, and Maite D. Oronoz-Rodríguez, Deputy Solicitor
General, were on brief for appellees.

April 24, 2007

_____
* Of the District of New Hampshire, sitting by designation.

**DICLERICO, District Judge**. Angelina Ruiz-Rosa brought suit against officials of the Puerto Rico prison system and prison medical personnel after her eighteen-year-old son, Jose Luis Machuca-Ruiz, died of septicemia while being detained at the Bayamón 1072 Correctional Complex ("BCC"). In her amended complaint, Ruiz alleged violations of the Fifth, Eighth, and Fourteenth Amendments, actionable under 42 U.S.C. § 1983, and medical malpractice under Puerto Rico law. The district court dismissed her suit as a sanction for failing to comply with its order to allege her claims as directed, and alternatively, granted summary judgment in the defendants' favor on the federal claim, and declined supplemental jurisdiction as to the malpractice claim, which was dismissed without prejudice.

## Background[1]

Jose Luis Machuca-Ruiz was incarcerated at BCC beginning on September 19, 2001. On November 21, 2001, he reported to sick call, requesting medical care for a skin infection on his upper right thigh. He was evaluated and given topical medication. The infection worsened, and Machuca was seen in the prison's emergency room on December 5 when the attending doctor found a mass in his upper right thigh area, ordered a complete blood count ("CBC"), and

---

[1]The facts are taken from the record and are undisputed unless otherwise stated.

prescribed Tylenol. Another doctor examined Machuca in the emergency room later in the day and noted swollen lymph nodes (adenopathy), with high fever and pain. Machuca was discharged from the emergency room early in the morning of December 6 before the results of the CBC were available.

The prison received the results of Machuca's CBC test later in the day on December 6. The results showed that he had an elevated white blood count, including elevated readings for neutrophils. He was given an antibiotic, which his mother contends was not effective to fight the type of infection that he had. On December 8, Machuca returned to the prison emergency room because of pain. The infection site showed signs of worsening, as his leg was tender, swollen, and red. The next day, Machuca was diagnosed with cellulitis in his right thigh. On December 10, another doctor in the prison emergency room diagnosed Machuca with a right thigh abscess and referred him to the prison infirmary.

Dr. Pichardo, the prison's part-time surgeon, was consulted about Machuca's case. Dr. Pichardo drained the abscess, ordered a culture of the abscess discharge, and ordered a second antibiotic. After the surgery, Dr. Pichardo, who worked at the prison only two days each week, did not do a follow up evaluation. On December 12, Machuca began to experience headaches and the wound site was secreting pus. During the night of December 12, Machuca began to experience respiratory problems. Early in the morning of

December 13, Machuca was transferred to Bayamón Regional Hospital, where he died the next day.

Angelina Ruiz-Rosa brought suit on her own behalf and on behalf of her deceased son on April 12, 2004. She alleged federal civil rights claims based on violations of the Fifth, Eighth, and Fourteenth Amendments and claims under Puerto Rico law of negligence and medical malpractice. Ruiz brought her claims against the Puerto Rico Administrator of Corrections, Victor Rivera González; the Secretary of the Department of Health, Johnny Rullán; the Chief Health Care Coordinator for Puerto Rico, Aida Guzmán-Font; the Medical Director at BCC, Hector Mena; medical doctors at BCC, including Rafael Pichardo; unnamed nurses at BCC; the unnamed Superintendent of BCC; and unidentified insurance companies.

The defendants filed a motion to dismiss in July of 2004 and also filed an answer to Ruiz's complaint. During the fall of 2004 and the winter of 2005, Ruiz moved to substitute some named parties for the John Doe defendants and to extend the deadlines for discovery and for identifying other defendants. With their motion to dismiss still pending, the defendants moved for summary judgment on March 15, 2005. On March 21, 2005, the district court denied the defendants' motion to dismiss but found that "the complaint jumbles the allegations pertaining to the constitutional tort with those partaking of a medical malpractice, and imputes all defendants with liability under either legal theory." The court

-4-

ordered Ruiz to file an amended complaint, on or before April 18, to "separate the factual allegations corresponding to each legal theory of liability, and . . . also define which defendants are liable under each of the theories, and for what actions." The court also warned Ruiz that failure to file an amended complaint as ordered would result in dismissal of her case. The court denied Ruiz's motions to substitute parties and to extend discovery deadlines.

Ruiz filed an amended complaint within the time allowed. The amended complaint named several new defendants in place of John Doe defendants. Ruiz also moved to dismiss all claims against Victor Rivera González. The court dismissed the claims against Rivera and against Hector Mena. The defendants supplemented their motion for summary judgment after the amended complaint was filed, and Ruiz filed a response. On February 15, 2006, the court dismissed the defendants who had been named as John Does but were then identified by name in Ruiz's amended complaint. On February 28, 2006, the court found that Ruiz's amended complaint did not comply with the order to separate her allegations as to each of her theories of liability and as to each defendant and dismissed all of Ruiz's claims as a sanction for noncompliance. At the same time, the court granted the defendants' motion for summary judgment on Ruiz's federal claim and declined supplemental jurisdiction as to

her malpractice claim under Puerto Rico law, which was dismissed without prejudice.

### Discussion

Ruiz appeals the district court's order that dismissed her claims as a sanction and alternatively granted summary judgment in the defendants' favor on her federal claims.[2] She contends that dismissing her claims as a sanction was inappropriate and that the district court erred in granting summary judgment in the defendants' favor on her federal claim. The remaining defendants, Johnny Rullán, Aida Guzmán-Font, and Rafael Pichardo, defend the district court's decision to dismiss Ruiz's claims as a sanction and argue that summary judgment was properly granted.[3]

---

[2]Ruiz does not appeal the district court's decisions denying Ruiz's motions to substitute named defendants for the John Doe defendants and dismissing additional defendants named in the amended complaint. Ruiz also does not challenge the district court's decision to decline supplemental jurisdiction over her malpractice claim.

[3]The defendants also argue that sovereign immunity provided by the Eleventh Amendment bars Ruiz's claims against them, which is a theory that the district court rejected. The defendants did not file a cross appeal to address this issue. To the extent the Eleventh Amendment implicates the court's jurisdiction, see Hudson Savings Bank v. Austin, --- F.3d ---, 2007 WL 642007, at *5 (1st Cir. Mar. 5, 2007) (noting issue of whether Eleventh Amendment is jurisdictional doctrine is unresolved), which the court is required to consider sua sponte, see Doyle v. Huntress, Inc., 419 F.3d 3, 6 (1st Cir. 2005), we are satisfied that the Eleventh Amendment does not provide immunity to the defendants here, who were sued in their individual capacities, see Dasey v. Anderson, 304 F.3d 148, 153 (1st Cir. 2002).

-6-

A.  Dismissal as Sanction

In response to a defendant's motion, a court may dismiss an action "[f]or failure of the plaintiff to prosecute or to comply with . . . any order of court."  Fed. R. Civ. P. 41(b).  A dismissal entered to sanction a party for failure to comply with a court's order or for failure to prosecute the case is reviewed for abuse of discretion.  Malot v. Dorado Beach Cottages Assocs., --- F.3d ---, 2007 WL 549110, at *3 (1st Cir. Feb. 23, 2007).  In determining whether an abuse of discretion has occurred, "we must fairly balance the court's venerable authority over case management with the larger concerns of justice, including the strong presumption in favor of deciding cases on the merits."  Id.

Dismissal with prejudice, along with contempt, are the most severe penalties that may be ordered against a recalcitrant party.  Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 4 (1st Cir. 2006).  We therefore reserve dismissal with prejudice for egregious misconduct that is measured by considering all aspects of the case, including "'the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions.'"  Id. at 5 (quoting Robson v. Hallenbeck, 81 F.3d 1, 2-3 (1st Cir. 1996)).  In addition, procedural fairness mandates that

-7-

the plaintiff be afforded an opportunity to explain her noncompliance or to advocate for a lesser sanction. Id. at 7.

In this case, the district court found Ruiz's original complaint wanting, but instead of dismissing her claims, the court granted her an opportunity to file a more clearly stated complaint. Ruiz filed an amended complaint within the time the court allowed. As directed, Ruiz separated her claims into separate causes of action, alleging deliberate indifference to serious medical needs under federal law as her first claim and medical malpractice under Puerto Rico law as her second claim. Ruiz alleged particular actions and conduct by each defendant, including the newly named defendants, in support of her federal claim. For her malpractice claim, however, Ruiz adopted by reference all of the allegations made in support of the federal claim and stated that those "acts and omissions, also amount to gross negligence and/or fault under Puerto Rico" law.

The district court found Ruiz's amended complaint deficient, concluding that she "utterly failed to comply with our Order of March 21, 2005." In particular, the court faulted Ruiz for "once again jumbl[ing] the allegations pertaining to the constitutional violation based on denial of medical care with those which would sustain a tort for medical malpractice, and unabashedly reassert[ing] that all defendants are liable under both legal theories." The court also found it unacceptable that Ruiz adopted

by reference all of the facts alleged in support of her federal claim to support her malpractice claim.[4]  The court concluded that Ruiz's medical malpractice claim against the defendants who were alleged to have "purely administrative deficiencies" was "patently frivolous."

To satisfy Federal Rule of Civil Procedure 8(a), a plaintiff must allege claims in a way that gives the defendants fair notice of what the claims are and the grounds for those claims.  Calvi v. Knox County, 470 F.3d 422, 430 (1st Cir. 2006).  The complaint "must 'at least set forth minimal facts as to who did what to whom, when, where, and why.'" Id. (quoting Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004)). Civil rights cases do not impose a heightened pleading standard.  Asociación De Suscripción Conjunta Del Deguro De Responsabilidad Obligatorio v. Flores Galarza, --- F.3d ---, 2007 WL 613719, at *17 (1st Cir. Mar. 1, 2007).

The defendants' counsel conceded at oral argument that Ruiz's amended complaint put the defendants on notice of what her claims were and the grounds for those claims and agreed that the

---

[4]The reason for the district court's aversion to Ruiz's adoption of allegations by reference is not clear.  Because that is a commonly-used pleading shortcut, that procedure, standing alone, cannot be a basis for the court's sanction.  See, e.g., Mass. Nurses Ass'n v. N. Adams Reg'l, 467 F.3d 27, 32 (1st Cir. 2006); Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38 (1st Cir. 2004); In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 14 (1st Cir. 2003); Conway Chevrolet Buick, Inc. v. Travelers Indem. Co., 136 F.3d 210, 214 (1st Cir. 1998).

amended complaint satisfied the requirements of notice pleading. The defendants' counsel argued, however, that the district court's sanction was within its discretion because Ruiz's amended complaint did not meet the more exacting requirements set forth in the district court's order. We disagree.

In its March 21 order, the district court required more than is necessary to satisfy the notice pleading standard of the federal rules. The district court then dismissed Ruiz's claims as a sanction for failing to comply with the court-imposed standard. It is far from clear that Ruiz failed to comply with the court's order, much less that any deficiency in the amended complaint was a sufficient basis to support the harsh sanction of dismissal.[5] The court's decision to dismiss the complaint as a sanction was an abuse of discretion. We turn to the alternative basis for the district court's decision, summary judgment.


B. Summary Judgment

On appeal, we review summary judgment de novo, employing the same standard that governed consideration of the motion below. See Salem Hosp. v. Mass. Nurses Ass'n, 449 F.3d 234, 237 (1st Cir.

---

[5]To the extent the district court dismissed Ruiz's claims as frivolous or for failing to state a cause of action, as opposed to imposing dismissal as a sanction, that result is also disfavored and would not have been appropriate here. See, e.g., Cepero-Rivera v. Fagundo, 414 F.3d 124, 130 (1st Cir. 2005); Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002); Gonzalez-Gonzalez v. United States, 257 F.3d 31, 36-37 (1st Cir. 2001).

2006). We therefore examine all of the material facts of record and resolve all reasonable inferences in favor of the non-moving party. N.H. Ins. Co. v. Dagnone, 475 F.3d 35, 37 (1st Cir. 2007). Summary judgment is appropriate when the properly supported facts of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The district court granted the defendants' motion for summary judgment on Ruiz's federal claims and declined supplemental jurisdiction over her malpractice claim, which was dismissed without prejudice. In doing so, the court noted that Machuca's illness was a serious medical need but agreed with the defendants that evidence was lacking to support the deliberate indifference prong of Ruiz's federal claim. Ruiz argues that she alleged sufficient facts to allow a jury to conclude that the defendants were deliberately indifferent to her son's serious medical needs and, to a lesser extent, contends that record facts support her claim.

Because Ruiz's son, Machuca, was a pretrial detainee rather than a convicted inmate, the Fourteenth Amendment governs his claim. Surprenant v. Rivas, 424 F.3d 5, 13 (1st Cir. 2005). The Fourteenth Amendment provides at least as much protection for pretrial detainees as the Eighth Amendment provides for convicted inmates. Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).

Generally, the standard applied under the Fourteenth Amendment is the same as the Eighth Amendment standard.[6]  Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002).

For medical treatment in prison to offend the Constitution, the care "must involve 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'"  Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).  Deliberate indifference in this context may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with "actual knowledge of impending harm, easily preventable."  Id. at 162 (internal quotation marks omitted).  Deliberate indifference means that "a prison official subjectively 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Burrell, 307 F.3d at 8 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  Therefore, substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation. Feeney, 464 F.3d at 161-62.

---

[6]The parties and the district court considered the claim under the Eighth Amendment.

Ruiz primarily relies on the allegations in her complaint to oppose summary judgment, and such reliance does not satisfy the Rule 56 standard. In contrast, the defendants cite to the medical record, deposition testimony, and their declarations submitted in support of the motion for summary judgment. See Fed. R. Civ. P. 56(c). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Allegations made in a plaintiff's complaint, standing alone, are not enough to oppose a properly supported motion for summary judgment. Velazquez-Garcia v. Horizon Lines of P.R., Inc., 473 F.3d 11, 15 (1st Cir. 2007).

As presented, the record provides no evidence of deliberate indifference on the part of any of the defendants. Ruiz's expert witness, Dr. Carlos Eduardo Ramirez Gonzalez, criticized the care Machuca received, stating that he was given ineffective antibiotics, that doses of the antibiotics which were prescribed were missed, that the staff failed to keep adequate medical records, and that the staff failed to respond when Machuca's condition worsened. Dr. Ramirez stated that in his opinion the prison medical staff was indifferent to Machuca's need for care because they saw that his condition was deteriorating but failed to take any action.

The record establishes that Dr. Pichardo treated Machuca by draining the abscess, ordering a culture, and prescribing a second antibiotic.  Although Ruiz disagrees with the treatment Dr. Pichardo provided, Dr. Ramirez's opinion does not provide evidence that Dr. Pichardo was aware that the antibiotic he prescribed was ineffective and would pose a substantial risk of harm to Machuca.  Ruiz also faults Dr. Pichardo for failing to monitor Machuca's condition after he treated him.  The record shows, however, that Dr. Pichardo only worked at the prison two days each week.  Ruiz provides no evidence that Dr. Pichardo was aware that his failure to monitor Machuca after treating him would subject Machuca to a substantial risk of harm.

Ruiz has shown only that her expert witness disagrees with Dr. Pichardo's choice of antibiotic and the course of treatment Dr. Pichardo provided, which might be evidence of malpractice (a matter on which we express no opinion), but is insufficient to show deliberate indifference. See Feeney, 464 F.3d at 162-63.  In addition, Ruiz, the party with the burden of proof, cannot rely on speculation or conjecture and must present "more than a mere scintilla of evidence in [her] favor." Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 76 (1st Cir. 2001).

Ruiz argues that Dr. Rullán, who was Secretary of the Puerto Rico Department of Health, and Dr. Guzmán, who was Chief Health Care Coordinator for the Correctional Health Services

-14-

Program, knew of the substandard medical treatment provided at BCC and failed to remedy the problem. Specifically, Ruiz contends that Dr. Rullán and Dr. Guzmán knew that failing to treat sepsis properly with antibiotics puts patients' lives at risk and that the practice of having a surgeon available only two days each week puts patients' lives at risk. She further contends that the risk of harm from inadequate medical treatment at BCC was obvious. Although Ruiz alleges that Dr. Rullán and Dr. Guzmán knew of these practices and their consequences, she provided no evidence of such knowledge.

While proof of deliberate indifference by prison officials does not require evidence that the officials were aware of the risk of a specific harm, the plaintiff must show that the officials had "knowledge of facts from which the official[s] can draw the inference that a substantial risk of serious harm exists." Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 65 (1st Cir. 2002). In some circumstances, "a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Burrell, 307 F.3d at 8. The risk, however, must have been obvious to the particular officials who are defendants. Id.

The record establishes that Dr. Guzmán was appointed by the federal court in Puerto Rico to coordinate compliance with the Medical Health Care Plan and the Mental Health Plan in the Puerto

Rico prison system. She had no involvement with medical care for individual inmates at BCC and knew nothing about Machuca's case until Ruiz filed suit. As Secretary of Health in Puerto Rico, Dr. Rullán had no involvement in the medical treatment provided to Machuca "or any other patient." He did not supervise the medical staff at BCC. Like Dr. Guzmán, Dr. Rullán became aware of Machuca's case only after Ruiz filed suit. Nothing in the record shows or even suggests that either Dr. Guzmán or Dr. Rullán knew of inadequate medical care at BCC, or that an inadequacy, which would permit the inference that inmates were at substantial risk of serious harm, was obvious.[7] Therefore, no factual issue exists to avoid summary judgment on whether Dr. Guzmán and Dr. Rullán were deliberately indifferent to a substantial risk of harm to Machuca.

## Conclusion

The district court abused its discretion in dismissing Ruiz's claims as a sanction for failing to comply with the heightened pleading standard imposed by the court's order. In the absence of a genuine issue of material fact on the question of the defendants' deliberate indifference to Machuca's serious medical needs, however, summary judgment was appropriately granted in the defendants' favor on Ruiz's federal claim. Ruiz does not appeal

---

[7]Indeed, Ruiz concedes as much, stating in her brief that "there is not much in the record regarding defendants' knowledge of the risks of harm that existed at [BCC]."

the district court's decision not to exercise supplemental jurisdiction over her malpractice claim. Therefore, that part of the district court's decision that dismissed Ruiz's claim as a sanction is harmless error.[8] The district court's decision granting summary judgment in favor of the defendants on the federal claim and declining supplemental jurisdiction over the malpractice claim, which was dismissed without prejudice, is **__affirmed__**.

---

[8]In addition, although the district court ordered that judgment enter dismissing the complaint as a sanction for failing to comply with the court's previous order, the judgment entered the same day dismissed the federal claims, with prejudice, and dismissed the tort claims under Puerto Rico law without prejudice.