# United States Court of Appeals

## For the First Circuit

No. 07-1151

LINDA MELLEN,

Plaintiff, Appellant,

v.

TRUSTEES OF BOSTON UNIVERSITY and FRANCES DROLETTE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker, Senior U.S. District Judge]

Before

Lynch and Lipez, Circuit Judges,
and Barbadoro,* District Judge.

Harry C. Beach for appellant.
Crystal D. Talley, with whom Lawrence S. Elswit was on
brief, for appellees.

September 21, 2007

---

* Of the District of New Hampshire, sitting by designation.

**LYNCH**, **Circuit Judge**. Linda Mellen challenges the district court's grant of summary judgment in favor of Boston University and an individual, Frances Drolette, on her claims that BU interfered with her substantive rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., and the Massachusetts Small Necessities Leave Act (SNLA), Mass. Gen. Laws ch. 149, § 52D. Mellen argues that BU miscalculated the period of leave to which she was entitled under both the FMLA and the SNLA, and also used her leave as a negative factor in an employment decision when it treated her failure to return to work as a voluntary resignation.

We affirm the decision that BU properly calculated and provided Mellen with the requisite amount of leave. Her appeal as to the negative factor claim is precluded by her voluntary dismissal with prejudice of her retaliation claims against BU. Accordingly, we affirm the district court's judgment. This case provides the first occasion for judicial interpretation of the intersection of certain FMLA regulations, 29 C.F.R. § 825.200(f) and 29 C.F.R. § 825.205(a), pertaining to proper allocation of intermittent leave. We also address again, as we did in Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325 (1st Cir. 2005), the distinction between substantive and retaliatory claims under the FMLA.

Linda Mellen began her employment with Boston University in 1977 and became Financial Manager for the School of Public Health (SPH) in 1998. Frances Drolette was hired as SPH's Associate Dean for Administration and Finance in September 2002 and served as Mellen's direct supervisor. There was considerable evidence of friction between the two beginning at least as early as the first months of 2003.

On July 17, 2003, Mellen applied in writing for leave so that she could care for her ailing mother. She requested to be out from August 4 through October 3 and, if necessary, again from October 28 through November 18. (The October gap encompassed fifteen days of vacation time Mellen had previously requested and been granted.) In a letter dated July 31, 2003, BU's Director of Personnel, George Snowdon, approved Mellen's request for leave. Snowdon's letter set forth other terms and conditions governing the leave, including that if Mellen failed to return to work on November 19, she would be considered to have resigned voluntarily.

Throughout the following months, there was communication about Mellen's return to work. In an email on October 1, Mellen indicated to Drolette that her mother's situation was unchanged and that she would be using her second block of FMLA leave. Drolette responded, in effect, that she would have appreciated Mellen's telling her that earlier and that she had thought that Mellen would

be back at work on Monday, October 6. In a letter dated October 24 from Drolette to Mellen, Drolette stated that it was her "current understanding" that Mellen would return to work on November 19. In light of Mellen's earlier lack of communication, the letter noted, "If your plans change in this regard you must communicate that to me as soon as possible." Such information was needed so BU could arrange its staffing accordingly. The letter further expressed concern about Mellen's "lack of professionalism, responsibility, and clarity in [her] communications regarding [her] family and medical leave and vacation plans." The letter also referred to Drolette's problems with Mellen's performance at work.

Meanwhile, in an October 23 letter, Mellen informed Drolette that she expected to be out of work through November 20, noting that she had extended her leave period by one day in light of a November 17 internal holiday granted by BU's Trustees. In a response letter dated October 29, Drolette stated that she had been advised that holidays did not serve to extend an employee's allowed FMLA leave and therefore she expected Mellen back at work on Wednesday, November 19.

Mellen did not return to work on November 19. Nor did she call or communicate to BU on November 19 any request for extended leave. Nor did she show up for work at any time thereafter.

By letter dated November 19, but not received by BU until later, Mellen stated she was afraid to return to work, in light of what she described as Drolette's "threatening" letter of October 24. On November 20, Mellen's lawyer sent a letter to BU reiterating Mellen's fear of returning to work. Meanwhile, Drolette sent Mellen a letter dated November 20 informing her that pursuant to the terms laid out in Snowdon's July 31 letter, BU was considering Mellen's failure to return to work on November 19 a voluntary resignation.

Mellen sued BU in federal district court, claiming that BU interfered with her substantive rights under the FMLA and SNLA by miscalculating her leave period, and also that BU fired her in retaliation for taking family medical leave. She attempted to separate out a negative factor claim from the retaliation claims by pleading them as separate counts. The parties filed cross-claims for summary judgment, and on October 18, 2005, the district court awarded summary judgment to BU on Mellen's substantive claims and reserved for trial the factual issues raised in her retaliation claims. With respect to the substantive claims, the court determined that Mellen's FMLA leave had been properly calculated because holidays that fell within her leave period were properly counted against it under 29 C.F.R. § 825.200(f). The court also determined that even if BU had improperly calculated Mellen's leave, Mellen needed prior approval for intermittent leave and

-5-

ought to have requested additional days off rather than failing to show up for work on November 19. As for Mellen's SNLA claim, the court held that Mellen failed to request the leave at least seven days in advance, as required by the governing statute.

On December 1, 2005, the district court rejected Mellen's motion for reconsideration. On November 30, 2006, the parties agreed to the dismissal with prejudice of the retaliation and all related claims. Mellen now appeals the grant of summary judgment on her claim that BU substantively interfered with her FMLA and SNLA rights.

## II.

We review a grant of summary judgment de novo, resolving all reasonable inferences in favor of the non-moving party. Ruiz-Rosa v. Rullan, 485 F.3d 150, 155 (1st Cir. 2007). "Summary judgment is appropriate when the properly supported facts of record 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

## A.    BU Did Not Fail To Provide Mellen the Full Duration of Leave Required by the FMLA

Mellen's FMLA leave consisted of intermittent leave taken in two blocks: August 4 through October 3 and October 28 through November 18. Intermittent leave is FMLA leave taken in separate blocks of time but for the same reason. 29 C.F.R. § 825.203(a).

"There is no limit on the size of an increment of leave when an employee takes intermittent leave."  29 C.F.R. § 825.203(d).

Mellen contends that she was denied the full number of FMLA days owed her because BU did not extend her leave to account for three holidays that fell within it (Labor Day, Veterans' Day, and the November 17 BU internal holiday).  Mellen argues that since her leave was intermittent, only the days she actually missed from work, and not holidays, should be counted.  See 29 C.F.R. § 825.205(a) ("If an employee takes leave on an intermittent or reduced leave schedule, only the amount of leave actually taken may be counted toward the 12 weeks of leave to which an employee is entitled.")  BU counters with another regulation which provides that in calculating the amount of FMLA leave taken, holidays occurring within a week taken as FMLA leave have no effect.  See 29 C.F.R. § 825.200(f).  Whether holidays are to be counted against intermittent leave taken in an interval of a week or more is a question of first impression.[1]

---

[1]    There is no published precedent on the consequences of an employee taking intermittent leave in a period of a week or more when one (or more) of the weeks contains a holiday.  In Shelton v. Charlotte-Mecklenberg Hosp. Auth., 2006 WL 3454859 (W.D.N.C. Nov. 29, 2006), an employee was placed on intermittent leave under the FMLA.  There was disagreement as to when eligibility for unpaid leave expired: the employer contended that it was April 21, 2004, and the employee claimed that the employer improperly counted two holidays against her leave and so her leave extended through April 23, 2004.  However, the court did not resolve the issue because there was no dispute that the employee's eligibility had ceased long before June 7, 2004, when the employer sought other applicants to fill the position.  Id. at *2.

-7-

No straining or awkward constructions, such as those advanced by plaintiff, are necessary; the regulations fit together naturally. General provisions governing FMLA leave are set forth in 29 C.F.R. § 825.200. Another regulation, 29 C.F.R. § 825.205, provides specific guidelines for employees taking intermittent leave. The applicability of section 825.200 to intermittent leave is assumed within the regulations. For instance, the provision in section 825.200 restricting an eligible employee's leave to a total of twelve workweeks during any twelve-month period unquestionably applies to intermittent leave. See 29 C.F.R. § 825.200(a); 29 C.F.R. § 825.205(a) (referring to the "12 weeks of leave" to which an employee taking intermittent leave is entitled).

The two particular provisions at issue, 29 C.F.R. § 825.200(f) and 29 C.F.R. § 825.205(a), also work together. Section 825.200(f) defines the "amount of leave used" by an employee: "[f]or purposes of determining the amount of leave used . . . the fact that a holiday may occur <u>within the week taken</u> as FMLA leave has no effect" (emphasis added). In turn, section 825.205(a) provides that for employees taking intermittent leave, only the "amount of leave actually taken" may be counted against the twelve-week entitlement. Thus if an employee's intermittent leave includes a full, holiday-containing week, section 825.200(f) provides that the "amount of leave used" includes the holiday. Nothing in section 825.205(a) changes this result. The "amount of leave actually

-8-

taken" to which section 825.205(a) refers is the "amount of leave used" defined in section 825.200(f).

This construction does not, as plaintiff argues, render section 825.205(a) meaningless. As the examples provided in the regulation demonstrate, the provision's purpose is to ensure that an employer does not claim that an employee who takes off one day during a five-day work week has taken off the entire week, or that an employee who works half days under a reduced work schedule has taken off more than a half day. Its purpose is not to give an advantage to an employee who takes off five weeks but designates it intermittent leave over an employee who takes off five weeks as continuous FMLA leave. Because BU gave Mellen the proper amount of leave, summary judgment was properly granted to BU on this substantive claim.[2]

Even if BU had incorrectly calculated the amount of Mellen's leave, intermittent leave requires prior approval by the employer. BU approved Mellen's leave only through November 18, 2003. Mellen failed to respond to Drolette's letter of October 29

---

[2]    Mellen also argues that BU violated 29 C.F.R. § 825.208(c), which mandates that if an employer requires that paid leave taken under an existing leave plan be counted as FMLA leave, that decision must be made within two business days of the time the employee gives notice of the need for leave or the employer determines that the leave qualifies as FMLA leave. However, Mellen presents no evidence that an employer giving holidays like Labor Day and Columbus Day constitutes the sort of "leave plan" referenced by the statute.

stating that Mellen was expected back at work on November 19. Therefore, as far as BU was aware, Mellen was planning to return to work on November 19. Mellen had an obligation to inform BU if she was intending to claim FMLA leave beyond November 18. See Gilliam v. United Parcel Serv., Inc., 233 F.3d 969, 971 (7th Cir. 2000) (noting that the FMLA does not "authorize employees on leave to keep their employers in the dark about when they will return").

B. Mellen's Negative Factor Claim Is a Retaliation Claim Which Has Been Dismissed with Prejudice

Under 29 U.S.C. § 2615 (a)(1), it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA right. Mellen contends that BU interfered with her FMLA rights by treating her leave as a "negative factor" in an employment decision. See 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.").

Mellen claims that BU used her FMLA leave as a negative factor in deciding to terminate her after she failed to show up for work on November 19. In particular, she argues that BU denied her several benefits that would have excused her November 19 absence. First, Mellen refers to a three-day grace period which she argues BU's Personnel Policy Manual allows to employees in her situation before their absence would be construed as a resignation. She also

-10-

points to the many sick and vacation days she had accrued as of late 2003 and BU's policy of allowing employees to take unpaid time off or leaves of absence for personal or medical reasons. Mellen also claims that BU did not honor its policy of allowing employees holiday leave if they were on authorized leave immediately before and after a holiday, as she was with respect to Labor Day, Veterans' Day, and the BU holiday on November 17.

Although they are based on the same underlying facts, Mellen argues that her negative factor claim is distinct from her dismissed retaliation claims because it relates to the FMLA's substantive provisions as opposed to its retaliatory ones. This position is directly contrary to our precedent. We have distinguished the FMLA's prescriptive provisions, which set forth substantive entitlements and for which an employer's subjective intent is irrelevant, from its proscriptive ones, for which the employer's motivation is central, Colburn, 429 F.3d at 331-32, and we have noted that negative factor claims should be characterized as proscriptive, Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998). In Colburn, we posited that whatever label a claim is given, what matters is "whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or her for having exercised or attempted to exercise those rights." Colburn, 429 F.3d at 332; see also Lufkin v. E. Me. Med. Ctr., 2006

-11-

WL 1892442, at *11 (D. Me. July 7, 2006). Here, the negative factor argument is that BU deliberately deprived Mellen of benefits available to others precisely because she took FMLA leave. Pleading negative factor as a separate count does not escape the reality that in this case it is a retaliation claim.

Moreover, the district court understood Mellen to present two distinct claims -- interference with substantive FMLA rights and retaliation -- and it expressly viewed the substantive interference claim as encompassing only the question of whether BU properly calculated Mellen's FMLA leave. Mellen's motion for reconsideration did not object to this reading of her pleadings.

Mellen chose to dismiss with prejudice her retaliation claims and cannot now backtrack and attempt, contrary to <u>Colburn</u> and <u>Hodgens</u>, to recharacterize the negative factor claim as one of substantive entitlement.

C.        <u>BU Did Not Owe Mellen Additional Leave Under the SNLA</u>

The SNLA allows employees to take a total of twenty-four hours of leave during any twelve-month period in addition to leave available under the FMLA. Mass. Gen. Laws ch. 149, § 52D(b). Mellen claims that BU failed to take the SNLA into account in calculating her leave and that the SNLA entitled her to twenty-four additional hours -- translating into three eight-hour workdays -- of leave.

-12-

The SNLA did not extend Mellen's leave because she failed to heed the statute's clear requirements. The SNLA provides that "[i]f necessity for leave under this section is foreseeable, the employee shall provide the employer with not less than seven days' notice before the date the leave is to begin." Mass. Gen. Laws ch. 149, § 52D(d). Mellen's situation was foreseeable, yet she failed to provide BU with any notice -- let alone seven days' notice -- that she desired leave beyond that available under the FMLA.

Mellen argues that she did not need to refer to the SNLA by name in order to seek relief under it and therefore her original application for leave should be construed as a request for SNLA as well as FMLA leave. Without resolving the question of exactly how much notice an employee must give an employer in order to assert her rights under the SNLA,[3] we agree with the district court that Mellen did not provide sufficient notice of her need for leave beyond that made available by the FMLA.

When Mellen originally asked for time off, she indicated that although she applied for the full twelve weeks available under

---

[3]     No Massachusetts court has yet construed the SNLA. Mellen argues that by analogy to the FMLA, no specific reference to the law is required in order for an employee to assert rights under the SNLA, an issue we do not reach. We do reject, on the undisputed facts, her position that BU should have known of her need for leave under the SNLA merely by virtue of its knowledge of her mother's illness.

the FMLA, she didn't "expect to need all of it."  Accordingly, BU and Mellen agreed that her leave would extend until November 18 only "if needed."  Mellen did nothing to even suggest that the FMLA leave period would be inadequate -- and in fact she implied the opposite.  During the following months, Mellen indicated that she would need to take the second block of her FMLA leave but she never requested any family-related leave beyond that already granted by BU.  Mellen did inform Drolette, by letter dated October 23, that she believed the BU internal holiday on November 17 extended her leave by a day; BU rejected her position on October 29; she said nothing in return.  Disagreement about a return date does not constitute a request for -- or the demonstration of a need for -- additional leave.

We affirm the district court's grant of summary judgment to the defendants.