# United States Court of Appeals
## For the First Circuit

No. 14-1466

RICO PERRY,

Plaintiff, Appellant,

v.

SUSIE ROY; CLAIRE ROCHA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Benjamin M. McGovern, with whom Amanda O. Amendola and Holland
& Knight LLP, were on brief, for appellant.
Tory A. Weigand, with whom James A. Bello and Morrison Mahoney
LLP, were on brief, for appellees.

April 3, 2015

**TORRUELLA, Circuit Judge**.  This appeal stems from an action pursuant to 42 U.S.C. § 1983 filed in the United States District Court for the District of Massachusetts by Appellant Rico Perry ("Perry"), an inmate at the Bristol House of Correction, against Susie Roy ("Nurse Roy") and Claire Rocha ("Nurse Rocha," and together with Nurse Roy, "Appellees"), both of whom were staff nurses at said correctional institution.  The complaint alleged that the medical treatment Perry received from Appellees for injuries resulting from a violent scuffle with prison guards did not meet the constitutional standard required by the Eighth and Fourteenth Amendments.

Perry now challenges the grant of summary judgment in favor of Appellees and the resulting dismissal of his § 1983 action.  Because the record establishes that there are issues of material fact in dispute that need to be decided by a factfinder, we remand this case to the district court for proceedings consistent with this opinion.

## I. Background

### A. Factual History

We review the facts in the light most favorable to Perry, the party opposing summary judgment.  Rockwood v. SKF USA Inc., 687 F.3d 1, 3 (1st Cir. 2012) (citing Agusty-Reyes v. Dep't of Educ., 601 F.3d 45, 48 (1st Cir. 2010)).

On Saturday, June 9, 2007, at approximately 1:10 a.m., while Perry was being booked into the Bristol facility following transfer from another correctional center, a fight broke out between him and several correctional officers. During the course of this incident, the officers caused serious injuries to Perry.

Within five minutes of this altercation, Perry was evaluated by Nurse Roy, who asked him about his injuries. Perry swears that his mouth was "pouring blood" from a long gash, his jaw was "clenched," and he had a lump on his head. Although he could barely talk, Perry was able to tell Nurse Roy that he was in pain and that his jaw was broken. He claims further that Nurse Roy did not "thoroughly examine" him, nor did she ever "come to focus on his jaw." Nurse Roy did, however, observe and diagnose a cracked tooth, clean the open wound, provide Perry with gauze, rinse his mouth with saline water, and advise Perry to obtain a sick slip for the tooth to enable him to see a dentist, who would be available the following Tuesday, June 12, 2007. But he was not given ice or aspirin for his pain, or otherwise provided any treatment for the jaw. Perry then requested to file a grievance report. Nurse Roy relates a fundamentally different story, backed up by her notes. She says that Perry complained only of the cut (not a broken jaw), that she checked his jaw, and that he could open it wide and verbalize without difficulty. For summary judgment purposes,

though, we must assume that Perry's version of the exam (or lack thereof) might be believed by the jury.

Approximately one hour after the incident with the correction officers and the evaluation by Nurse Roy, Perry was formally booked into the Bristol facility. Later that night, while in his cell, Perry passed out and was awakened by Nurse Roy, who applied smelling salts to him. He asked Nurse Roy to be taken to the hospital again, but this request was also ignored.

At around 4:10 a.m., he complained to a second attending nurse, Nurse Rocha, that he had been beaten by correctional officers and had an unattended broken jaw. Perry requested again to be taken to a hospital. Nurse Rocha examined Perry through a glass window for less than a minute and noted that Perry had an "egg" on his forehead. Although Nurse Rocha initially said she would help him, her willingness to help came to naught after she spoke to Lt. Robert Shubert, who had been involved in the incident where Perry was hurt. Perry claims that the officer asked her to let Perry "sleep it off." Thereafter, Nurse Rocha denied all further care. Perry does, however, concede that Nurse Rocha told Lt. Shubert that she did not believe he had a broken jaw. Nurse Rocha claims that, despite telling her that he had a broken jaw, Perry denied having any pain at that time. Finally, Nurse Rocha entered a note for someone to notify the medical unit if Perry "began to suffer from nausea/vomiting or vertigo."

At approximately 5:30-6:00 p.m. that same day -- seventeen hours after the beating -- Perry was examined again, this time by a third nurse, due to his complaint of jaw pain and shortness of breath. Perry had developed swelling of the jaw and also some wheezing. This resulted in his immediate transfer to St. Luke's Hospital, where, within two hours of his arrival, he was diagnosed with an acute bilateral mandibular fracture. The attending physician, Dr. David Fuerman, also noted tenderness and swelling on Perry's forehead, jaw, neck, and cervical spine as well as bilateral shallow breath and bilateral rib pain. He classified Perry's injuries as "critical injuries" caused by the use of a "tremendous amount of force."

Perry was transferred out of St. Luke's to Massachusetts General Hospital ("M.G.H.") because neither the attending physician, Dr. Fuerman, nor any member of the St. Luke's medical staff was qualified to treat Perry's severe mandibular fractures. Despite the district court not having the benefit of expert witness testimony presented by the plaintiff to support his contentions regarding his serious medical need, Dr. Fuerman testified that, although he had on occasion released patients with broken jaws back to a stable home environment, he did not release Perry back to the Bristol House of Correction in part because "[w]ith an injury this significant, with the amount of force required to fracture the mandible and have a laceration in the base of his mouth, waiting 20

-5-

hours to bring him in for medical attention, I didn't know that he would receive appropriate attention." Instead, Perry underwent surgery at M.G.H. to repair the mandibular fracture. Dr. Fuerman also testified that Perry required "critical care" when he arrived at the hospital and that he spent sixty minutes caring for Perry.

## B. Procedural History

Perry filed this § 1983 action for deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments. In his amended complaint he requested compensatory and punitive damages, as well as attorney's fees.

The district court dismissed the claim on summary judgment, reasoning that Perry failed to establish that the Appellees were deliberately indifferent to his medical needs by ignoring his requests to go to the hospital or provide treatment to his broken jaw. In the district court's opinion, the fact that Perry had been provided at least some treatment contradicts the showing that the Appellees knew that his condition was sufficiently serious when he requested to go to the hospital, but opted to ignore it. Also, Perry was sent to the hospital seventeen hours after the incident, which seemed reasonable to the district court, since it only demonstrated that the condition worsened over time and was treated appropriately as it progressed.

Furthermore, the district court concluded that: (1) Perry had not established that the Appellees acted with a culpable state of mind in ignoring his requests for additional treatment; (2) the Appellees provided the medical treatment they saw fit according to the information they had at the time they made the decisions; and (3) any issues of fact would be immaterial to that conclusion. On the issue of whether the Appellees had a culpable state of mind, the court added that the fact that Perry alleged that Nurse Rocha denied him care with the intent to punish him for being involved in the brawl after talking to an officer was not a material fact in controversy but rather was simply an "improbable or overly attenuated inference[], unsupported conclusion[], and rank speculation" that it need not consider. Considering the facts in the light most favorable to Perry, as we are required to do, we disagree that there is no issue of material fact and that Appellees were entitled to summary judgment.

## II. Discussion

### A. Standard of Review and Summary Judgment

A grant of summary judgment must be reviewed de novo. Ortiz-Bonilla v. Federación de Ajedrez de P.R., Inc., 734 F.3d 28, 40 (1st Cir. 2013) (citing Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013)); Calvi v. Knox Cnty., 470 F.3d 422, 426 (1st Cir. 2006). All facts in the record, as well as all reasonable inferences to be drawn therefrom, are drawn in favor of

the nonmovant.  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).  Summary judgment is only appropriately granted "where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007) (citing Fed. R. Civ. P. 56(c)).

A genuine issue of material fact "must be built on a solid foundation -- a foundation constructed from materials of evidentiary quality." García-González v. Puig-Morales, 761 F.3d 81, 87 (1st Cir. 2014) (internal quotation marks omitted) (quoting Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013)). The district court's role is limited to assessing whether there exists "evidence [] such that a reasonable jury could return a verdict for the nonmoving party." Showtime Entm't, LLC v. Town of Mendon, 769 F.3d 61, 69 (1st Cir. 2014) (alteration in original) (internal quotation marks omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## B. Deliberate Indifference

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  Ever since the passing of the Bill of Rights, courts have derived from this text the principles that govern the permissible conditions for providing the medical treatment that prisoners must be afforded.  See Kosilek v. Spencer, 774 F.3d 63,

82 (1st Cir. 2014) (en banc), petition for cert. filed (March 17, 2015) (No. 14-1120). The failure to provide medical care "may actually produce physical torture or a lingering death." Id. (quoting Brown v. Plata, 131 S. Ct. 1910, 1928 (2011)) (internal quotation marks omitted).

Consequently, the Constitution requires that care be not "so inadequate as to shock the conscience." Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir. 1991) (internal quotation marks omitted). Prison officials, therefore, violate the Eighth and Fourteenth Amendments' prohibition against "cruel and unusual" punishments when they exhibit "deliberate indifference" to a detainee's serious medical needs. Feeney v. Corr. Med. Servs., 464 F.3d 158, 163 (1st Cir. 2000) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

To succeed on a claim of deliberate indifference based on inadequate or delayed medical care, "a plaintiff must satisfy both a subjective and objective inquiry." Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011). Objectively, he must establish that the deprivation was "sufficiently serious." Id.; see also Kosilek, 774 F.3d at 82 ("[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need.") (citing Estelle, 429 U.S. at 106).

-9-

Subjectively, a plaintiff must show "that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." Leavitt, 645 F.3d at 497 (quoting Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002)).

**1. Objective Test: "Serious Medical Need"**

As to the objective prong, we have held that a serious medical need does not require that an inmate receive the best possible treatment "that money can buy." Kosilek, 774 F.3d at 85 (quoting United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987)). However, a serious medical need is "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). Even a significant risk of future harm may suffice. Kosilek, 774 F.3d at 85 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).

In the instant case, given the force involved in the altercation, and accepting Perry's version of his symptoms as presented to the nurses (a clenched jaw that would not open fully and was causing pain sufficient for him to announce that he thought it was broken), a lay person could find it obvious that the nurses should at least have examined the jaw.

**2. The Subjective Test: "Wanton Disregard"**

The subjective prong relies entirely on whether the Appellees had a purposeful intent while neglecting Perry's treatment. See Estelle, 429 U.S. at 105. The purposeful intent, also known as deliberate indifference, requires evidence that the absence or inadequacy of treatment is intentional. Id. (holding that "an inadvertent failure to provide adequate medical care" is not a constitutional violation); Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) ("The courts have consistently refused . . . to conclude that simple medical malpractice rises to the level of cruel and unusual punishment."). The typical example of a case of deliberative indifference would be one in which treatment is denied "in order to punish the inmate." Id. Additionally, a showing of "wanton disregard" would be grounds for deliberate indifference. Battista v. Clarke, 645 F.3d 449, 453 (1st Cir. 2011).

**C. Analysis**

**1. Deliberate Indifference to a Serious Medical Need**

As previously stated, the district court concluded that Perry failed to overcome both hurdles. On the objective test, despite finding that a broken jaw is a "serious injury," it reasoned that this was somehow cured by the fact that Perry was transferred to a hospital for additional medical treatment "within approximately seventeen hours after the injury allegedly occurred." Because Perry's physical symptoms substantially worsened over time,

this change in the information available to the prison's medical staff ultimately led the third nurse to conclude that Perry required emergency transfer to the hospital. The court then concluded that to the extent that certain facts were in dispute, they were not material to the resolution of the case, because they did not have "the potential of affecting the outcome of the case."

The district court also found that Perry had failed to establish that the Appellees were deliberately indifferent to his needs under the subjective prong. In this respect the court concluded that, "[e]ven assuming that [Perry] informed both defendants that his jaw was broken, that he asked to be taken to the hospital, and that both nurses refused to do so, that [was] insufficient, without more, to establish deliberate indifference." Because neither Nurse Roy nor Nurse Rocha had knowledge of the full extent of Perry's injuries at the time of each evaluation, and they did not deliberately deny him medical treatment, the court held that the subjective prong was not met. The Appellees argue in their brief that any issue in dispute is immaterial.

We find, however, that there are material facts in dispute, which -- taken together on the record as a whole, and if believed by a reasonable jury -- could lead to the sustainable conclusion that the Appellees were deliberately indifferent to Perry's complaints of a broken jaw. Moreover, we find that these disputed material issues of fact could affect the district court's

analysis of both the objective and subjective prongs.  These factual issues include: whether Perry was barely able to speak or open his mouth since his first evaluation by Nurse Roy; whether Perry stated that he had a broken jaw and requested to go to the hospital; whether these facts, together with the gash, pain, and bleeding, amounted on their own to a serious medical need; whether, if such complaints were in fact made, mere cursory inspection of Perry's tooth -- without any inspection of his jaw -- was sufficient to justify postponing any treatment of the broken jaw given the other injuries to Perry's mouth and face that were clearly present; whether Perry asked again to go to the hospital when Nurse Roy woke him up with smelling salts after passing out; whether Nurse Rocha said she would help him but then denied further treatment after talking to Lt. Shubert who asked her to let Perry "sleep it off"; whether, despite having a broken jaw, Perry denied having any pain at all times as claimed by the Appellees; and whether the medical need may have been one that was so obvious "that even a lay person would easily recognize the necessity for a doctor's attention."  Gaudreault, 923 F.2d at 208.

When examining the record as a whole, we disagree with the district court's holding that the treatment offered by the Appellees based on the information they had at the time was necessarily appropriate.  The fact that the condition worsened over time says nothing of the condition at the times Perry was

-13-

evaluated; a reasonable jury could have found that this shows that the medical condition was serious all along, thus meeting the objective prong.  See id.  Other issues of material fact in controversy are whether the delay in receiving treatment for the broken jaw was for seventeen hours or more; and, if so, whether such a delay was objectively reasonable given the circumstances, or if there is any evidence of a detriment to his health by this delay, be it permanent or not.  It is also in dispute whether Appellees subjectively knew of Perry's serious medical need but deliberately ignored it.  While Appellees allege they did not believe he had a broken jaw, Perry asserts he specifically told them that his jaw was broken, the testimony of the treating physician shows that his injuries were severe, and Perry's condition worsened over time.  Moreover, even though Appellees opted for a wait-and-see approach and instructed the medical unit to be contacted if conditions worsened, Perry's allegations are that all of these conclusions were based on non-thorough examinations, one of which was conducted through a window, for less than a minute.

**2. The District Court Incorrectly Weighed the Evidence**

The district court erred in its weighing of Perry's testimony that he received no treatment for his serious medical need.  "[I]n ruling on a motion for summary judgment, '[t]he evidence of the non-movant [Perry] is to be believed, and all

justifiable inferences are to be drawn in his favor.'" Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam) (quoting Anderson, 477 U.S. at 255) (citation omitted). Perry's interactions with Nurses Roy and Rocha are central matters in dispute. If Perry's testimony about those interactions has to be accepted as true for summary judgment purposes, it means that neither Roy nor Rocha performed any meaningful, thorough examination (i.e., were deliberately indifferent), that Rocha was in fact told by Lt. Shubert to ignore Perry's pleas so as to let him sleep it off, and that this "medical" advice was accepted by Nurse Rocha. All of these facts, if believed by a reasonable jury, could lead to a supportable conclusion that Perry's case meets the wanton disregard standard for deliberate indifference under the subjective prong. Notably, Perry does not complain of the quality of the treatment received at the hands of the Appellees, which would present a malpractice allegation. Rather, he alleges that he received no treatment at all after being evaluated by the Appellees, despite their knowledge of his complaints and his visible serious medical needs.

Finally, we note that in analyzing the objective prong, the district court found that the fact that Perry received some treatment, including eventually being transferred to a hospital,

shows that his serious medical needs were not ignored.[1] The Appellees simply provided some additional treatment as the condition evolved over time. Appellees argue that such additional treatment necessarily defeats a plaintiff's claim under the objective prong. If we were to accept this premise, no deliberate indifference case would ever go to trial so long as someone managed to take an inmate to the hospital right before he or she died, as we can easily presume serious medical conditions do not necessarily improve on their own over time. This is precisely why the Constitution protects an inmate from a significant risk of future health harms. See Helling, 509 U.S. at 35; see also DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (The mental state "requir[es] actual knowledge of impending harm, easily preventable.").

Notwithstanding the foregoing, we do agree with Appellees that in order to prevail, Perry must prove that it was obvious that he had a serious need for greater or more immediate medical attention than he claims Appellees provided, and that Appellees failed to provide any care for his jaw sooner not merely because they were negligent, but because they were deliberately indifferent to that need. We hold only that if all issues of fact, including

---

[1] The district court and the Appellees also consider this additional treatment as relevant to the subjective prong, but for the reasons already discussed, we believe that a reasonable jury could find for Perry on that prong.

credibility, were resolved in Perry's favor, there would be enough information for a jury to so find here.

In sum, this case presents triable issues of fact to be resolved by factfinders.

### III. **Conclusion**

The decision of the district court is reversed and this case is remanded for proceedings consistent with this opinion.

**REVERSED and REMANDED.**