# United States Court of Appeals
## For the First Circuit

No. 17-2115

JENNA ZINGG,

Plaintiff, Appellant,

v.

THOMAS GROBLEWSKI and MASSACHUSETTS PARTNERSHIP FOR
CORRECTIONAL HEALTHCARE,

Defendants, Appellees.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]


Before

Torruella, Thompson, and Barron,
Circuit Judges.


David Milton, with whom Howard Friedman, Georgi Vogel Rosen, and Law Offices of Howard Friedman, P.C. were on brief, for appellant.
Tory A. Weigand, with whom Morrison Mahoney LLP was on brief, for appellees.


October 29, 2018

**BARRON**, **Circuit Judge**.  In 2015, Jenna Zingg ("Zingg"), a pretrial detainee at the Massachusetts Correctional Institute-Framingham ("MCI-Framingham"), sued Dr. Thomas Groblewski ("Groblewski") and the Massachusetts Partnership for Correctional Healthcare ("MPCH") in the United States District Court for the District of Massachusetts.  She brought a Massachusetts state law claim for common law negligence and a federal law claim, pursuant to 42 U.S.C. § 1983, for a violation of her right under the Eighth Amendment of the United States Constitution, as incorporated against the states by the Fourteenth Amendment, to be free from cruel and unusual punishment.  See U.S. Const. amends. VIII, XIV. The District Court granted the defendants' motion for summary judgment on the § 1983 claim and dismissed Zingg's state law negligence claim without prejudice.  We affirm.

## I.

The following facts are not in dispute.  Jenna Zingg entered MCI-Framingham on March 12, 2013, as a pretrial detainee. She had a long history of psoriasis and had tried a variety of treatments, including clobetasol, the most potent topical steroid available; Dovonex, a weaker topical vitamin D analog; and Humira, a systemic treatment that targets the immune system.

Zingg responded well to Humira, which she had been taking for about nine months prior to entering MCI-Framingham.  However,

Zingg did not receive her regularly scheduled Humira injections after entering MCI-Framingham, and her psoriasis worsened.

On April 25, after Zingg submitted repeated requests for medical attention, she was examined by Patricia Casella, a physician's assistant at MCI-Framingham who worked for MPCH, the contractor that provides all medical and mental health services to individuals held in Massachusetts Department of Correction facilities. At that examination, Casella prescribed Zingg with clobetasol, which was a formulary medication, meaning that it was pre-approved for administration by MPCH.

Zingg's psoriasis became more and more severe, even while she was using clobetasol, and she submitted increasingly urgent requests for medical attention between July 1 and July 11. On July 12, Casella again examined Zingg and, noting the deterioration of her condition, prescribed her Humira and Dovonex, which was prescribed pending approval of a prescription for Humira. Both of these medications, however, were non-formulary medications and, as such, were not pre-approved to be administered to MPCH's patients. Thus, the pharmacy forwarded the requests to Dr. Thomas Groblewski, who, as the statewide medical director for MPCH, was responsible for approving all non-formulary prescription requests made by MPCH practitioners.

On July 15, Groblewski approved the Dovonex request but denied the request for Humira. The pharmacy sent Casella a denial of the Humira request that same day.

Zingg's psoriasis continued to get worse while she used Dovonex, and, on August 6, MPCH approved a request for Zingg to see a dermatologist at Lemuel Shattuck Hospital. At her August 9 appointment with the dermatologist, Zingg was diagnosed with severe psoriasis and mild psoriatic arthritis, admitted as an in-patient, and screened for risk of infection. She was given an initial dose of Humira on August 11 and discharged to MCI-Framingham the next day. She received a second Humira shot at the prison on August 27 and was released from prison on September 5, by which time she had experienced significant improvement in her condition.

All of the events at issue took place in 2013. Zingg filed this suit on March 11, 2015. In the suit, she brought a claim under § 1983, alleging that Groblewski, and, vicariously, MPCH, acted with deliberate indifference to her serious medical needs in violation of her federal constitutional right under the Eighth Amendment to adequate medical care while incarcerated.[1] She

_____

[1] Although all of the medical practitioners with whom Zingg interacted worked for MPCH, Zingg premises her federal constitutional claim only on Groblewski's July 15 decision to deny the request for Humira, and she names as defendants only Groblewski and MPCH, as his employer.

- 4 -

also brought a claim under Massachusetts law, alleging that the same defendants were negligent in providing her proper medical care.

Following discovery, the defendants moved for summary judgment on Zingg's § 1983 claim. They did so on the grounds that she had failed to show that a jury could reasonably find that Groblewski's decision not to approve the request for Humira constituted deliberate indifference to Zingg's serious medical needs and thus violated her Eighth Amendment right and that, in any event, Groblewski was entitled to qualified immunity on that claim.

On September 29, 2017, the District Court granted the defendants' motion, without reaching the qualified immunity issue. The District Court did so on the ground that no reasonable jury could find that Groblewski acted with deliberate indifference to Zingg's medical needs. And, on November 7, 2017, the District Court entered final judgment for the defendants on Zingg's § 1983 claim and dismissed her state law negligence claim without prejudice, as no federal law claim remained. Zingg filed this timely appeal.

## II.

Zingg argues that the District Court erred in granting the defendants summary judgment on her § 1983 claim. Zingg also

argues that Groblewski is not entitled to qualified immunity, but, as we will explain, we need not reach that issue.

## A.

Our review of the District Court's grant of summary judgment is de novo. Perry v. Roy, 782 F.3d 73, 77 (1st Cir. 2015). Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We consider a dispute genuine if 'a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015) (quoting Velázquez–Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 270 (1st Cir. 2014)).

Nevertheless, "if the summary judgment record satisfactorily demonstrates that the plaintiff's case is, and may be expected to remain, deficient in vital evidentiary support, this may suffice to show that the movant has met its initial burden." Ocasio-Hernández, 777 F.3d at 4 (quoting Carmona v. Toledo, 215 F.3d 124, 133 (1st Cir. 2000)). In making that assessment, we must keep in mind that "[c]onclusory allegations, improbable inferences, and unsupported speculation[ ] are insufficient to establish a genuine dispute of fact." Id. (quoting Velázquez–Pérez, 753 F.3d at 270).

**B.**

The Eighth Amendment, applied to the states through the Fourteenth Amendment, protects incarcerated people from state corrections officials' "deliberate indifference to serious medical needs." Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161-62 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). There are both objective and subjective components to a claim for this type of Eighth Amendment violation. Perry, 782 F.3d at 78 (quoting Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011)).

The objective component requires the plaintiff to prove that she has a medical need "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc) (quoting Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990)). The defendants do not dispute that Zingg put forth evidence sufficient to meet this requirement.

The subjective component requires the plaintiff to show that prison officials, in treating the plaintiff's medical needs, possessed a sufficiently culpable state of mind. That state of mind is one that amounts to deliberate indifference to the claimant's health or safety. Perry, 782 F.3d at 78.

The "obvious case" that would meet this "deliberate indifference" standard "would be a denial of needed medical treatment in order to punish the inmate." Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993). But, deliberate indifference may also take the form of "wanton" or criminal recklessness in the treatment afforded. Id.

To show such a state of mind, the plaintiff must provide evidence that the defendant had "actual knowledge of impending harm, easily preventable," id., and yet failed to take the steps that would have easily prevented that harm. Such a showing may be made by demonstrating that the defendant provided medical care that was "so inadequate as to shock the conscience," Feeney, 464 F.3d at 162 (quoting Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir. 1991)), or, put otherwise, that was "so clearly inadequate as to amount to a refusal to provide essential care." Torraco, 923 F.2d at 234.

## III.

We begin by examining Zingg's contention that the record would permit a jury to find that Groblewski knew enough about Zingg's medical history to make it obvious that the course of treatment that he approved -- namely, prescribing Dovonex but not Humira -- would amount to a refusal to provide essential care. Zingg points out, in this regard, that the record shows that the dermatologist who had been treating Zingg prior to her

- 8 -

incarceration wrote to the MCI-Framingham medical department on April 10, 2013. In that letter, the dermatologist stated that "[s]urface medications have been inadequate to treat her skin condition" and "[s]urface medications cannot possibly treat her psoriatic arthritis."

There is no evidence in the record, however, that would permit a jury to find that Groblewski was aware of this assessment. The undisputed record shows that Groblewski did not even become involved in Zingg's care until July 15. And, at that point, the record shows that his involvement was solely in his capacity as the statewide medical director responsible for reviewing all non-formulary medication requests.

Moreover, the undisputed record shows that Groblewski, in making his decision to deny Humira on July 15, consulted exclusively the two non-formulary requests that he received from Casella. Yet, there is nothing in the non-formulary requests that would have indicated to Groblewski that Zingg had already unsuccessfully received the treatment described in the dermatologist's letter.

With regard to Zingg's medical history and condition, those non-formulary requests stated only that Zingg had a history of moderate to severe psoriasis, that she was taking Humira prior to her incarceration, that she had been using clobetasol at MCI-Framingham for several months, and that she had increasing

psoriasis and joint pain.[2]  In fact, although the non-formulary request for Humira concluded that "[Patient] needs to resume her [H]umira 40 mg every other week as in community," Casella also requested a non-formulary prescription for Dovonex, which was "indicated pending Humira approval."

Of course, a decision to replace the strongest topical medication for treating psoriasis, which had failed, with a weaker topical medication, could be concerning.  But, Zingg does not identify any evidence in the record from which a jury could reasonably find that Groblewski intended for Dovonex to replace, rather than to supplement, clobetasol.  After all, the record shows that she had been using clobetasol in the months before Groblewski approved Dovonex, and her medical records also indicate that she was prescribed both in the weeks after.  And, while it is true that Groblewski did not expressly state that he intended for Dovonex to be used alongside clobetasol, Casella stated in her deposition that "[Groblewski] wanted to determine whether the clobetasol and the Dovonex together would provide better relief [than clobetasol alone]."

Thus, we do not see how a jury could find that Groblewski intended for Dovonex to be the exclusive means of treating her

_____

[2] The requests also described her condition in more detail, explaining that she had moderate plaque lesions on her elbows and that severe psoriasis covered ninety percent of her vulva and inner thighs.

condition, given that we may not credit conclusory allegations in reviewing a motion for summary judgment. Ocasio-Hernández, 777 F.3d at 4. And, the fact that a jury could not reasonably so find is problematic, as Zingg did not produce any evidence to suggest that Groblewski knew, when he prescribed Dovonex but not Humira, that even the combination of clobetasol and Dovonex would not work for her.

As stated above, there is no evidence that Groblewski knew anything about Zingg's condition or topical medication history beyond what was in the non-formulary requests. And those requests, as we have explained, did not themselves indicate that the combination of the two ointments would not work.

In addition, there is no basis in the record from which a jury could conclude that it is so implausible that the two medications at issue here -- clobetasol and Dovonex -- would be effective in combination that it may be reasonably inferred that Groblewski knew that his prescribed course of treatment would be ineffective, even if he did not directly say as much. To the contrary, the record shows that before Zingg's incarceration, at times when she was not on Humira, Zingg had taken clobetasol and Dovonex together, indicating that the two topical medications are sometimes prescribed in combination and are expected to provide better relief together than either one would if prescribed alone. And, it is undisputed that MPCH's treatment protocol for psoriasis

- 11 -

requires patients to try two topical medications before moving on to systemic treatments. Indeed, even in cases where topical medications "may not have been effective for the patient in the community [before incarceration]," MPCH's treatment protocol requires trials of topical medications because "it is not uncommon to find that such medications, when prescribed in a controlled environment (such as prison), produce better results."

Thus, we do not see how we could conclude that Groblewski, when faced only with the two non-formulary requests from Casella and MPCH's treatment protocol for psoriasis, acted in a manner that could reasonably be interpreted as exhibiting a "deliberate intent to harm" or "wanton disregard" for Zingg's health, Battista v. Clarke, 645 F.3d 449, 453 (1st Cir. 2011), in opting to approve the use of a topical drug before approving a systemic treatment. That is especially the case given that the parties do not dispute that the systemic treatment at issue could pose other risks to Zingg's health that would not be presented by the topical treatment.

**IV.**

Zingg does make a number of other arguments as to why the District Court's grant of summary judgment on her Eighth Amendment claim was improper. But, we are not persuaded.

First, Zingg asserts that the District Court did not credit the opinion of her well-qualified expert, who stated that

treating Zingg with only Dovonex after clobetasol was unsuccessful was akin to "shooting a pistol at an armored car after a missile had failed." But, the District Court did not fail to credit that evidence.

The District Court found that "[e]ven assuming [the expert's statement] to be true, . . . the record fail[ed] to demonstrate deliberate indifference." The District Court reached that conclusion after determining that the expert's opinion was helpful to Zingg only if Groblewski meant to prescribe Dovonex instead of, and not in addition to, the more potent clobetasol. And, as the District Court correctly determined, nothing in the record permitted a jury reasonably to find that Groblewski intended for Zingg to stop using clobetasol when she began using Dovonex. Thus, although "the [D]istrict [C]ourt [is] required to assume that any disputes of material fact--including conflicting opinions offered by competent experts--could be resolved by the jury in the [nonmovant's] favor," Jones v. City of Boston, 845 F.3d 28, 32 (1st Cir. 2016), the District Court did not disregard that requirement in determining that Zingg's expert did not provide a basis for denying the defendants' summary judgment motion as to her Eighth Amendment claim.

Zingg next contends that she met her burden at summary judgment with respect to that claim because she put forth evidence to show that Groblewski did not gather more information before

- 13 -

denying Humira and prescribing Dovonex. As support for this contention, Zingg points to Leavitt, where we recognized that a reasonable jury could conclude that a corrections official acted with deliberate indifference when that official, being aware of a serious risk to a patient's health, chose not to confirm that risk by failing to review information that he typically reviewed for other patients. 645 F.3d at 498-500 (showing that a medical professional at a county jail with firsthand knowledge of an HIV-positive patient's condition neglected to examine a critical report and to follow up on that patient's symptoms). See also Farmer v. Brennan, 511 U.S. 825, 843 n.8 (1994) (noting that a prison official "would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist").

These circumstances, however, are not present here. Zingg identifies no record evidence that would permit a jury to find that Groblewski was aware or even "strongly suspected" that her condition required care beyond the prescribed course of treatment by the protocol. Rather, Groblewski's decision followed MPCH's "general practice standards," which Zingg does not challenge as being themselves inconsistent with the Eighth Amendment. And, while those standards require a member of the medical staff, in this case Casella, to assess the patient and

- 14 -

obtain prior medical records, they require Groblewski only to do what Zingg does not dispute that he did: review non-formulary request forms when approving non-formulary medications or defining alternative treatments. Therefore, although Groblewski admits that he could have sought more information about Zingg's case, the evidence in the record at most supports a finding that Groblewski "fail[ed] to alleviate a significant risk that he should have perceived but did not[.]" Farmer, 511 U.S. at 838. And, while such a failure, insofar as it occurred, is "no cause for commendation, [it] cannot under [Supreme Court case law] be condemned as the infliction of punishment." Id.[3]

Finally, Zingg asserts that a jury could find that Groblewski denied Humira because of its cost and that such a finding would suffice to permit a jury to find that Groblewski was deliberately indifferent to her serious medical needs. To support this assertion, she cites the fact that MPCH would be covering the cost for Humira, which is an expensive medication; the fact that cost containment was important to MPCH, which Groblewski knew; and

---

[3] Zingg argues briefly that psoriatic arthritis is not treatable with topical medication at all and thus that a reasonable jury could conclude that Groblewski knew that topical medications alone would be ineffective. Yet, though Groblewski did know that Zingg had joint pain, which Casella listed on the non-formulary request, he did not have any information indicating that she had "probable psoriatic arthritis," which was indicated in Zingg's medical history. Moreover, until her diagnosis in August 2013 during her incarceration, Zingg had never been formally diagnosed with psoriatic arthritis.

- 15 -

the fact that Casella told Zingg, during her April 25 examination, that Humira would not be approved because of its high cost.

We are not aware of any authority, however, to support the proposition that there is a per se Eighth Amendment prohibition against corrections officials considering cost, even when considered only in the course of selecting treatment that is aimed at attending to an incarcerated person's serious medical needs. See Battista, 645 F.3d at 453 (explaining that the Supreme Court's Eighth Amendment jurisprudence "leave[s] ample room for professional judgment, constraints presented by the institutional setting, and the need to give latitude to administrators who have to make difficult trade-offs as to risks and resources."). Thus, even if there were sufficient evidence in the record to show that Groblewski took cost into account in making his July 15 denial of Humira in favor of Dovonex, that evidence would not in and of itself provide a supportable basis for a finding of deliberate indifference, given what the record shows regarding what Groblewski knew about Zingg's condition, MPCH's treatment protocol for psoriasis, and the potential risks posed by Humira that topical medications do not pose.[4]

---

[4] Zingg also argues that her ultimate receipt of proper care several weeks later does not absolve Groblewski. It is certainly true that we have rejected the notion that "the fact that [a patient] received some treatment, including eventually being transferred to a hospital, shows that his serious medical needs were not ignored." Perry, 782 F.3d at 81. However, Zingg's later treatment has no

**V.**

For the foregoing reasons, the judgment below is **affirmed**.

---

bearing on our conclusion that the District Court correctly determined that the record provided no basis from which a jury could reasonably find that Groblewski's care, while lacking, was not constitutionally inadequate.