# United States Court of Appeals
## For the First Circuit

No. 22-1153

SALVATORE MIRABELLA, JR.,

Plaintiff, Appellant,

v.

TOWN OF LEXINGTON, MASSACHUSETTS; MARK CORR, FORMER CHIEF OF
POLICE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Lipez, Circuit Judges.

Ronald W. Dunbar, Jr., with whom Dunbar Law P.C. was on brief,
for appellant.
Gareth W. Notis, with whom Francesca L. Cone and Morrison
Mahoney LLP were on brief, for appellees.

April 4, 2023

**SELYA**, **Circuit Judge**. This appeal arises out of a suit filed by plaintiff-appellant Salvatore Mirabella, Jr., a former police officer, against the town of Lexington, Massachusetts (the Town) and its retired chief of police, Mark Corr. Mirabella contends that the defendants denied him due process in the termination proceedings that ended his affiliation with the Town's police department and that they intentionally interfered with his efforts to gain employment elsewhere. The district court entered summary judgment for the defendants on all of Mirabella's claims. See Mirabella v. Town of Lexington, No. 19-12439, 2022 WL 464188, at *1 (D. Mass. Feb. 15, 2022). It is from this order that Mirabella now appeals.

We need not tarry. "We have explained before that when a 'trial court correctly takes the measure of a case and authors a convincing decision, it rarely will serve any useful purpose for a reviewing court to wax longiloquent' merely to hear its own words resonate." Potvin v. Speedway LLC, 891 F.3d 410, 414 (1st Cir. 2018) (quoting Eaton v. Penn-Am. Ins. Co., 626 F.3d 113, 114 (1st Cir. 2010)); accord Seaco Ins. Co. v. Davis-Irish, 300 F.3d 84, 86 (1st Cir. 2002); Ayala v. Union de Tronquistas de P.R., 74 F.3d 344, 345 (1st Cir. 1996). This is such a case. Consequently, we affirm the judgment below for substantially the reasons explicated in the district court's cogent rescript, adding only two comments directed to Judge Lipez's dissenting opinion.

- 2 -

<u>First</u>.  Our dissenting colleague maintains that the summary judgment record reveals a genuine dispute of material fact as to whether the reason stated by the Bentley Police Department (BPD) for refusing to hire Mirabella was pretextual.  In a nutshell, our dissenting colleague insists that a reasonable jury could find that BPD did not deny Mirabella employment because he prevented BPD investigators from completing a required component of their background check (as BPD has stated) but, rather, denied him employment because BPD wanted no part of him after it learned that he was a "union agitator."  <u>See</u> <u>post</u> at 14.  And because Corr was the person who told BPD of these union proclivities, the dissent's thesis runs, a reasonable jury also could find that Corr's comments harmed Mirabella's employment prospects.  For these reasons, our dissenting colleague concludes that there is a triable issue of fact regarding Mirabella's claim of intentional interference with advantageous relations (IIAR).  This "pretext" issue is doubly waived:  it was neither advanced by Mirabella in the district court nor meaningfully developed by him in his briefing in this court.  <u>See</u> <u>McCoy</u> v. <u>Mass. Inst. of Tech.</u>, 950 F.2d 13, 22 (1st Cir. 1991) (explaining that "theories not raised squarely in the district court cannot be surfaced for the first time on appeal"); <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that "issues adverted to in a perfunctory

manner [on appeal], unaccompanied by some effort at developed argumentation, are deemed waived").

Our dissenting colleague suggests that there was no waiver because the relevant components of the argument can be found at various points throughout Mirabella's opening brief (and throughout his presentations in the district court). See post at 11 n.3. This suggestion is unpersuasive. Appellate adjudication is not a scavenger hunt, and a party cannot rely upon an appellate court to rummage through the record and weave isolated facts into a coherent theory. See Zannino, 895 F.2d at 17. For purposes of preservation, it is not sufficient that either Mirabella's brief or the district court record (or both, for that matter) contain scattered references to the facts from which our dissenting colleague has cobbled together the "pretext" theory that he now introduces. To hold otherwise would be to flout both the "bedrock principle that appellate arguments must be presented face-up and squarely," Moses v. Mele, 711 F.3d 213, 217 (1st Cir. 2013), and the corollary principle that arguments made in the district court must be presented in an equally forthright manner, see Iverson v. City of Boston, 452 F.3d 94, 102 (1st Cir. 2006).

The short of it is that Mirabella himself has made no effort to explain — either below or on appeal — how his rendition of the factual record demonstrates a basis for believing that BPD's stated reason for not hiring him was pretextual. It follows that

he has doubly waived the issue, and we respectfully decline our dissenting colleague's implicit invitation that we do his work for him.

Second.  In all events, Mirabella has not shown that the summary judgment record contains "definite, competent evidence," Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), from which a reasonable jury could find that BPD's stated reason for denying him employment was pretextual.  The only competent evidence directly addressing BPD's decision not to hire Mirabella is the department's statement documenting the fact that Mirabella's "lack of cooperation" had prevented investigators from "completing a full home visit."  In light of the incomplete home visit, BPD concluded that Mirabella "ha[d] disqualified himself from further consideration" for employment.  That conclusion was relayed to Mirabella in an email, in which BPD informed Mirabella of its decision to "discontinue[]" the background investigation.

Faced with this uncontroverted evidence, our dissenting colleague points to the fact that, during the course of BPD's background check, Corr told a BPD investigator that Mirabella had expressed an intent to "stir things up" were he to be hired by BPD.  Our dissenting colleague then suggests — without citation to any record evidence — that a series of inferences can be drawn: that BPD would have been generally reluctant to hire someone who had expressed a desire to engage in union activities; that BPD

- 5 -

thus determined that it was not going to hire Mirabella; that because BPD did not want to openly admit its real reason, it needed to make up a facially plausible alternative story; and that such a story line dropped into its lap when — weeks later — Mirabella refused to allow BPD investigators full access to his home. See post at 14-15. Simply describing this tortured chain of reasoning vividly illustrates that it stacks "inference upon inference" in a way that fails to show a genuine issue of material fact. Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 398 (1st Cir. 2012). That reasoning relies more on speculation and surmise than on plausible parallel inferences drawn from competent evidence. And it is an uncontroversial proposition that "conjecture cannot take the place of proof in the summary judgment calculus." Bennett v. Saint-Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007); see Zingg v. Groblewski, 907 F.3d 630, 634 (1st Cir. 2018) (explaining that "improbable inferences[] and unsupported speculation" cannot "establish a genuine dispute of fact" sufficient to withstand summary judgment motion (quoting Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015))). Although "we must draw all reasonable inferences in [Mirabella's] favor at the summary judgment stage," Alston v. International Association of Firefighters, Local 950, 998 F.3d 11, 31 (1st Cir. 2021), we are not required to draw "unreasonable" inferences, Cabán Hernández v.

<u>Philip Morris USA, Inc.</u>, 486 F.3d 1, 8 (1st Cir. 2007) (emphasis in original).

We need go no further. We affirm the judgment below for essentially the reasons elucidated in the district court's rescript.

**<u>Affirmed</u>**.

**—Dissenting Opinion Follows—**

**LIPEZ**, **Circuit Judge, dissenting**. Like my colleagues, I believe that the district court correctly granted summary judgment on most of the claims asserted by Salvatore Mirabella, Jr. in this case. We part ways only regarding Mirabella's contention that Mark Corr, the former Chief of Police for the Town of Lexington, intentionally interfered with Mirabella's ability to gain employment with the Bentley Police Department ("BPD").

Indeed, the dispute here concerns only one of the four elements of that claim. To prove that Corr intentionally interfered with his job application to BPD, Mirabella must establish, among other elements, that he "was harmed by [Corr's] actions."[1] Katz v. Belveron Real Est. Partners, LLC, 28 F.4th 300, 313 (1st Cir. 2022). The district court determined that Mirabella could not survive Corr's motion for summary judgment based solely on this element of the tort, and my colleagues uphold the court's determination that Mirabella has not generated a genuine dispute

---

[1] In Massachusetts, a plaintiff can succeed on a claim of intentional interference with advantageous business relations if:

> 1) he or she has a contractual or advantageous relationship with another, 2) the defendant knowingly induced a breach of that contract or relationship, 3) the defendant's interference, in addition to being intentional, was improper in "motive" or "means" and 4) the plaintiff was harmed by the defendant's actions.

Katz v. Belveron Real Est. Partners, LLC, 28 F.4th 300, 313 (1st Cir. 2022); see Blackstone v. Cashman, 860 N.E.2d 7, 12-13 (Mass. 2007).

of material fact on the issue of whether Corr "harmed" Mirabella's employment prospects with BPD. The majority, however, fails to acknowledge the ample evidence in the record that supports Mirabella's argument.

In reviewing a grant of summary judgment, we ask if there is a genuine dispute of material fact for a jury to consider. See Lahens v. AT&T Mobility P.R., Inc., 28 F.4th 325, 333 (1st Cir. 2022). A genuine issue of material fact exists when a reasonable jury, presented with competing facts, could resolve the issue in favor of the non-moving party. See Zingg v. Groblewski, 907 F.3d 630, 634 (1st Cir. 2018). Thus, a non-movant can successfully overcome a summary judgment motion by "present[ing] definite, competent evidence" establishing a factual dispute. Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015).

In this case, Mirabella's allegations rely heavily on circumstantial evidence concerning the impact of Corr's conduct on Mirabella's employment prospects. But the "circumstantial" label in no way circumscribes the force of Mirabella's evidence. Indeed, trial courts routinely instruct juries about the types of evidence they can consider in resolving a factual dispute. Here is a familiar instruction:

> "Direct evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did. "Circumstantial evidence" is proof of one or more facts from

which you could find another fact.  You should consider both kinds of evidence.

3 Fed. Jury Prac. & Instr. § 101:42 (6th ed. Supp. Feb. 2023). Critically, jury instructions routinely emphasize that "[t]he law makes no distinction between the weight to be given to either direct or circumstantial evidence."  Id.  That is, direct evidence is no more valuable than circumstantial evidence.  The trial judge will often supplement the above by guiding the jury on the permissible use of circumstantial evidence:

> [A]ny inference on which you rely in reaching your decision must meet two requirements. First, you may draw the inference for a conclusion only from facts that have been proved to you.  Second, any inference that you use must be reasonable and natural, based on your common sense and experience in life.

General Instructions, Massachusetts Superior Court Civil Practice Jury Instructions, Vol. I-1.

Respectfully, I suggest that my colleagues have failed to appreciate how a reasonable jury could consider and credit the circumstantial evidence Mirabella offers to support his intentional interference claim.  Indeed, Mirabella's assertion of pretext would be compelling if the jurors believed his explanation for BPD's incomplete home visit -- a credibility determination that is for them to make, not us.[2]  To emphasize the majority's

---

[2] To assist jurors in their factfinding role, trial judges typically will instruct them on how to evaluate a witness's credibility:

- 10 -

error, I offer a closing argument that Mirabella's attorney might make to the jury on the causation prong of his intentional interference claim against Corr, drawing solely on facts in the record.[3]

> You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; . . . other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence.

3 Fed. Jury Prac. & Instr. § 101:43.

[3] My colleagues assert that Mirabella has waived his argument that BPD's stated reason for not hiring him was pretextual and that Corr's comments provide the true reason behind BPD's decision. While I acknowledge that Mirabella did not develop his position as fully as he could have, a fair reading of the record demonstrates that the pretext claim was adequately raised in both the district court and on appeal.

In his deposition, which is part of the summary judgment record, Mirabella testified that BPD's stated reason for not hiring him -- his refusal to allow BPD officers to undertake a home visit -- was fabricated. He stated that, in fact, he told the officers he could not complete the visit that day because his children were home. Mirabella claimed that BPD, using the incomplete home visit as a pretext, did not hire him because Corr had told BPD officers Mirabella was a union sympathizer and so would be disruptive. The district court understood that Mirabella was making a pretext claim. In rejecting that claim, the court stated: "[a]lthough Plaintiff proffers that he did not comply [with the home visit] because his children were present in his home at the time, this does not change the fact that BPD's own stated reason for not hiring him was his own lack of cooperation." Mirabella v. Town of Lexington, No. 19-CV-12439-ADB, 2022 WL 464188, at *10 (D. Mass. Feb. 15, 2022).

*Members of the jury. The question before you today is whether Chief Corr's comments to BPD officers about my client's union sympathies harmed my client's employment prospects. Corr would have you believe that BPD's written report on Mirabella's job application resolves this question simply because it states that Mirabella was disqualified for refusing to cooperate with a home visit to check that his firearms were safely stored. But this statement is only one side of the argument.*

*My client insists that BPD's stated reason for not hiring him is a pretext. The real reason, he says, was Corr's disclosure to BPD officers that Mirabella would "stir things up" if hired because of his union experience. We have presented ample evidence from which you can, and should, conclude that BPD's stated reason was indeed a pretext. Do not fall into the trap of doubting Mirabella and the reasonable inferences you draw from the evidence simply because of BPD's report. Remember, the judge has instructed you that these reasonable inferences are every bit as good as the document from BPD.*

*Consider the following:*

*1. My client testified that he explained to the officers why he could not complete the home visit when they appeared, without advance notice, at his door. His children were home*

---

Mirabella reprised his pretext argument on appeal. In his brief, he contends that BPD's stated reason for not hiring him is false, outlines his own competing account of the home visit, and argues that Corr's "fabricat[ed] stories about Mirabella's desire to unionize [BPD]" are, in fact, the "real reason" for BPD's decision. See Appellant Br. at 22-23. Mirabella's allegation of pretext was sufficiently stated for the district court to understand his claim, and it is likewise sufficiently stated in his appellate brief to deserve consideration on the merits.

*from school and he did not want them to see either his guns or the location of his guns.*

*So why does BPD make no reference to Mirabella's explanation in its report on the background investigation and home visit? Why does BPD's report instead give a wholly different account of the home visit, attributing words to my client that he denies ever saying? BPD's report states that Mirabella refused to let officers inspect the second floor of his home, telling them "you're not going up there . . . that's just how I operate. . . . If this costs me the job, so be it." Mirabella says he never said anything of the sort. Think about it for a moment. Do those statements sound like something a job applicant would say after going through the trouble of trying to secure a job? We have two competing narratives here, and it is your role to determine which one is true.*

*If you do not believe the testimony of my client then his case is over. It is as simple as that. But you have heard the judge tell you how to evaluate the credibility of witness testimony. If you apply those instructions, I suggest that you will conclude that Mirabella's account is both credible and perfectly reasonable. Who among you would not want to shield your children from firearms? And if you believe Mirabella, you are entitled to draw the inference that BPD had a reason for not wanting to acknowledge Mirabella's reasonable explanation for not completing the home visit.*

*2. The question for you then becomes what is that reason -- why would BPD not acknowledge Mirabella's explanation, but instead create a false narrative of the home visit to justify not hiring him, otherwise known as a pretext? There is compelling circumstantial evidence to answer that question. Consider how events unfolded with respect to Mirabella's application to BPD.*

*On February 6, 2018, two BPD officers visited the Lexington Police Department to speak with Corr about Mirabella's application. During this conversation, Corr indisputably made a damaging disclosure about Mirabella's union sympathies. Corr testified that he spoke with a BPD background officer about Mirabella's union activities, telling the officer that "[Mirabella] was going to use his union experience to go [to BPD] and improve the contract and improve all the benefits, and he was going to stir things up a bit." This comment cannot be viewed as anything but damaging to Mirabella's candidacy -- who would want to hire a troublemaker? Corr himself even recognized that he was making a sensitive disclosure at the time he made it. He volunteered the information about Mirabella's union activities only after inquiring into the BPD officers' union status and asking the unionized officer to leave the room.*

*Critically, the sensitivity with which Corr treated his disclosure about Mirabella's union troublemaking reflects an indisputable inference grounded in experience and common sense -- police departments are cautious about union-related activity and are careful about how they handle union members. As you know from your own life experiences, union activity can be a divisive issue in workplaces and unions can cause headaches for employers. So ask yourselves: would BPD want to state on Mirabella's background investigation report that they chose not to hire him because of his union activity? Surely not.*

*By the end of the conversation with Corr, then, BPD had a problem: officers had heard that Mirabella was a union agitator, they did not want to hire him because of this information, but they could not reveal that they rejected his candidacy on that basis. They needed a pretext. And they got one a month later when they visited Mirabella at home.*

*3. On March 8, 2018, two BPD officers attempted to complete a visit of Mirabella's home to inspect his firearms. As you know, Mirabella says he did not want them to complete the inspection because his children were home. BPD's inability to complete the home visit therefore became lucky for them. They attributed to Mirabella implausible statements about why he would not allow the inspection, and the incomplete inspection provided BPD with a reason to reject Mirabella's candidacy without mentioning his union activities.*

*In summary, putting all of this together, we have credible evidence in Mirabella's testimony, along with reasonable inferences, that lead to one common-sense conclusion: BPD's stated reason for not hiring Mirabella was a pretext, and the real reason was Corr's indisputably damaging disclosure about Mirabella's union activities. Therefore, you should find that Corr's statements harmed my client's employment prospects with BPD.*

\*\*\*

Could the jury reject this argument? Sure. I am not suggesting that Mirabella's position is necessarily more persuasive than the competing evidence offered by Corr. But it is important to recognize that there is competing evidence, and it is a jury's role to resolve the material factual dispute this evidence generates. In disregarding the circumstantial evidence supporting Mirabella's pretext claim, my colleagues in fact draw inferences in favor of the moving party, Corr, by taking BPD's stated reason for not hiring Mirabella at face value. They are wrong to do so. Because the majority opinion disregards a genuine issue of material

fact and the role of juries in resolving such a dispute, I respectfully dissent.